Phyllis WILBURN, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–90–231–CV.

Court of Appeals of Texas, Austin.

Feb. 5, 1992.

---

4. In arriving at this conclusion, the Court specifically distinguished *Allen v. Humphreys.*

Donald L. Anderson, Jr., Whitten, Hacker, Hagin, Anderson & Rucker, P.C., Abilene, for appellant.

Dan Morales, Atty. Gen., David Randell, Asst. Atty. Gen., Collections Div., Austin, for appellee.

Before POWERS, JONES and SMITH, JJ.

SMITH, Justice.

We withdraw our opinion and judgment dated November 13, 1991, and substitute the following in their place.

The question presented is whether the use of the term "debt" in § 171.255 of the Franchise Tax Act[1] includes liability for delinquent unemployment taxes.

## I. BACKGROUND

Travelcorp International, Inc. (Travelcorp), a Texas corporation, failed to pay its franchise taxes that were due March 15, 1986. 1981 Tex.Gen.Laws, ch. 389, § 171.-001, at 1691 (Tex.Tax Code Ann. § 171.001, since amended).[2] On June 16, 1986, the comptroller forfeited Travelcorp's corporate privileges.[3] Upon forfeiture, each director or officer becomes liable for certain debts of the corporation:

If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

Tex.Tax Code Ann. § 171.255(a) (1982).[4] Travelcorp revived its corporate privileges on August 13, 1986.[5]

---

1. Franchise Tax Act, 1981 Tex.Gen.Laws, ch. 389, § 171.001–401 at 1691 (Tex.Tax Code Ann. § 171.001 *et seq.*, since amended).

2. "A franchise tax is imposed on each corporation that does business in this state or that is chartered or authorized to do business in this state."

3. 1984 Tex.Gen.Laws, 2nd C.S., ch. 10, art. 3, § 5, at 74 (Tex.Tax Code Ann. § 171.251, since amended).

4. A director or officer of the corporation is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:
   (1) over the director's objection; or
   (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.
   Tex.Tax Code Ann. § 171.255(c) (1982). Appellant does not raise the defenses to liability found in § 171.255(c).

5. Section 171.258 of the Act provides that the comptroller shall revive the corporate privileges of a corporation if the corporation, before the

During its existence, Travelcorp was subject to the Unemployment Compensation Act which requires an employer to pay contributions to the Texas Employment Commission's Unemployment Compensation Fund. Tex.Rev.Civ.Stat.Ann. § 5221b–5(a) (1987). Travelcorp failed to pay contributions due on wages paid in the first and second quarters of 1986 and the State instituted suit to recover the delinquent contributions.

The original defendants in the suit were Travelcorp (formerly Hoyt Tours, Incorporated, doing business as Barker Travel Services, Inc.), and Phyllis Wilburn, J.N. Fiore and Stephen E. Lewis, each of whom was an officer or director of Travelcorp. The trial court granted an interlocutory default judgment against Travelcorp and severed the cause of action against defendants Fiore and Lewis. The State filed a motion for summary judgment against Wilburn and in its motion requested that the trial court render final judgment against Travelcorp.

In its motion for summary judgment, the State relied upon § 171.255 of the Tax Code to contend that Wilburn was personally liable for delinquent unemployment contributions and penalties in the amount of $11,320.80. Wilburn filed a cross-motion for summary judgment. The trial court granted the State's motion for summary judgment, rendered final judgment against Travelcorp, and denied Wilburn's cross-motion. Wilburn appeals from the trial court's judgment.[6]

In three points of error, Wilburn asserts the trial court erred in granting the State's motion for summary judgment because: (1) section § 171.255 of the Tax Code does not impose personal liability on an officer of a corporation for taxes; (2) the State failed to offer evidence that the obligations to pay unemployment contributions were created or·incurred after the date of forfeiture; and (3) there was no summary judgment evidence as to the date the tax liability was created or incurred to support judgment in the amount of $11,320.80. On original submission we reversed the trial court's summary judgment against appellant. The State has filed an amended motion for rehearing. In its prayer for alternate relief, the State requests that we accept its voluntary remittitur and affirm the trial court's judgment. Tex.R.App.P.Ann. 85(e) (Supp.1991). We will overrule the State's motion for rehearing, accept its remittitur, modify the judgment against appellant to reflect the remittitur, and affirm the trial court's judgment as modified.

## II.  STANDARD OF REVIEW

■ The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. This Court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in her favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

## III.  DISCUSSION AND AUTHORITIES

### A.  The Construction To Be Given a Statute Is a Question of Law

In her first point of error, appellant asserts that the trial court erred in granting the State's motion for summary judgment on the basis of § 171.255 of the Tax Code which imposes personal liability for debts of a corporation, because unemployment

---

forfeiture of its charter or certificate of authority, pays any tax, penalty, or interest due under this chapter. Tex.Tax Code Ann. § 171.258 (1982).

**6.** Travelcorp did not appeal from the trial court's final judgment.

contributions are taxes, *Friedman v. American Surety Co. of New York*, 137 Tex. 149, 151 S.W.2d 570, 576 (1941), and Texas law has long recognized that "taxes" are not "debts."

■ Section 171.255 does not define the term "debt." Debt is defined elsewhere in the Act, but by express provision, the definition does not apply in this cause.[7] The term is not otherwise defined in the statute. Neither the State nor appellant has directed this Court to a case construing the term as used in the Act, and we have not found any such case. Neither has the State directed us to any agency rule construing the term "debt" as used in § 171.-255.[8] It is then our duty to construe the meaning of "debt" to give effect to the legislature's intentions. The construction to be given a statute is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989).

B. The Meaning of the Term "Debt" Is To Be Determined By Construction

■ The meaning of the term "debt", as used in a particular statute, is to be determined by construction. *Reconstruction Finance Corporation v. Gossett*, 130 Tex. 535, 111 S.W.2d 1066, 1073 (1938) (debt defined differently owing to the subject-matter of the statutes in which it has been used); *McNeill v. City of Waco*, 89 Tex. 83, 33 S.W. 322, 323 (1895) ("debt" is used in different statutes and constitutions in senses varying from the very restricted to the very general).

The term "debt" has been assigned both narrow and broad meanings. For a narrow definition see *Stevenson v. Blake*, 131 Tex. 103, 113 S.W.2d 525, 527 (1934) (a debt is a pecuniary obligation imposed by contract); *McClintock & Robertson v. Cottle County*, 127 S.W.2d 319, 322 (Tex.Civ.App.1939, writ dism. judgm. cor.), *appeal after remand aff'd, Cottle County v. McClintock & Robertson*, 150 S.W.2d 134 (Tex.Civ.App. 1941, writ dism. judgm. cor.) (a contingent liability becomes a debt only upon the happening of the contingency) (citing 17 C.J. 1377 for the proposition that every debt must be certain and payable); *and* 26 C.J.S. *Debt* § 1 (1956) (a debt is an obligation arising out of contract, express or implied). A more expansive definition of "debt" can be found in *Barber v. City of East Dallas*, 83 Tex. 147, 18 S.W. 438, 439 (1892) (in its more general sense debt means that which one person is bound to pay to or perform for another); *and* 26 C.J.S. *Debt* § 1 (1956) (term "debt" need not be confined to obligations for the payment of money arising out of contract and may include a variety of kinds of obligations). Additionally, this court has treated certain contingent liabilities as debts to be excluded from surplus for purposes of the Act. *State v. Shell Oil Co.*, 747 S.W.2d 54, 55–57 (Tex.App.1988, no writ); *State v.*

---

**7.** Section 171.109(a)(3) defines the term "debt" as follows:

(a) In this chapter:

(3) "Debt" means any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand.

Tex.Tax Code Ann. § 171.109(a)(3) (Supp.1992). Section 171.109(a)(3) was enacted by the 70th legislature as part of Senate Bill No. 1170. 1987 Tex.Gen.Laws, ch. 324, § 1, at 1734. Section 4 of this act provides:

(a) The change in law made by this Act applies to the computation and reporting of franchise taxes for each calendar reporting period beginning on or after May 1, 1988, and for which tax payments are due on or after March 15, 1988. . . .

(b) The law in effect immediately before the effective date of this Act applies to any report-

ing period not covered by the change in law made by this Act, and the law is continued in effect for that purpose only, except that the comptroller by rule may provide for earlier application of the change in law made by this Act to any reporting period in progress on the effective date of this Act.

1987 Tex.Gen.Laws, ch. 324, § 4, at 1736. Travelcorp's corporate privileges were forfeited for failure to pay franchise taxes due in 1986. The effective date of this Act was August 31, 1987. Therefore, the definition of debt found in § 171.109(a)(3) may not be applied in this cause. We must construe the statute as it existed before this amendment.

**8.** We do give weight to, although we are not bound by, agency rules construing statutes. *See Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 568 (Tex.App.1990, no writ); *Direlco, Inc. v. Bullock*, 711 S.W.2d 360, 363 (Tex.App.1986, writ ref'd n.r.e.).

*Sun Refining & Marketing, Inc.,* 740 S.W.2d 552, 553–55 (Tex.App.1987, writ denied); *State v. Sun Oil Co. (Delaware),* 740 S.W.2d 556, 558 (Tex.App.1987, no writ) (contingent liabilities based on reasonable estimates, treated as corporate debt and excluded from surplus for franchise tax purposes).

Whether a tax is or may ever be a debt also depends upon the construction to be given in the particular instance. A tax is not a debt in the ordinary sense of the word, because taxes are not contractual obligations and do not bear interest unless expressly provided for by statute. *Jones v. Williams,* 121 Tex. 94, 45 S.W.2d 130, 136–37 (1931) (discussing the American state court authorities followed by Supreme Court of Texas); 84 C.J.S. *Taxation* § 1 (1954). Nevertheless, a tax is considered a liability or obligation, and may be a debt under a particular statute, or in the enlarged sense of the word debt, which embraces any kind of just demand. *Highland Park Indep. School Dist. v. Republic Ins. Co.,* 162 S.W.2d 1056, 1063 (Tex.Civ.App. 1942), *rev'd on other grounds,* 141 Tex. 224, 171 S.W.2d 342 (Com.App.1943); 84 C.J.S. *Taxation* § 1 (1954).

Appellant urges us to adopt a restricted meaning for the term "debt." We begin by applying the rules set forth in the Code Construction Act, Tex.Gov't Code Ann. § 311.001 *et seq.* (1988 & Supp.1991)[9], and other rules applicable to statutory construction.

### C. Applicable Rules in Aid of Construction of Statutes

■ The construction to be given a statute depends upon the legislative intent, which is to be determined from the language used and the purpose in enacting the law. *Ross Amigos Oil Co. v. State,* 134 Tex. 626, 138 S.W.2d 798, 800 (1940). A court must look to the entire Act in determining the legislature's intent with respect to a specific provision. *Taylor v. Firemen's & Policemen's Civil Service,* 616

S.W.2d 187, 190 (Tex.1981). The Code Construction Act provides certain basic rules in aid of construction of statutes:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

Tex.Gov't Code Ann. § 311.023 (1988). This Court also presumes the entire statute is intended to be effective and that public interest is favored over any private interest. Tex.Gov't Code Ann. § 311.021(1), (5) (1988).

■ Generally, statutes imposing a corporate franchise tax are to be liberally construed so as to effectuate the purpose of their enactment as revenue statutes. *Isbel v. Gulf Union Oil Co.,* 147 Tex. 6, 209 S.W.2d 762, 764 (1948). *See also Calvert v. Texas Pipe Line Company,* 517 S.W.2d 777, 781 (Tex.1974) (stricter construction given in favor of taxpayer *if* doubt about statute's application remains after dominant rules of construction have been applied). However, statutes making directors and officers liable for corporate debts must be strictly construed and cannot be extended beyond the clear meaning of their language. *Schwab v. Schlumberger,* 145 Tex. 379, 198 S.W.2d 79, 81 (Tex.1946) (interpreting Tex.Rev.Civ.Stat.Ann. art. 7091, a predecessor to § 171.255). Additionally, because § 171.255 is penal in nature, it must be strictly construed to protect those

---

**9.** The Franchise Tax Act was enacted by the 67th legislature as part of House Bill No. 1708, which was an act adopting Title Two of the Tax Code. *See* 1981 Tex.Gen.Laws, ch. 389, § 1, at

1490. In construing a code enacted by the 60th legislature in 1967, or any subsequent legislature, the Code Construction Act applies. Tex. Gov't Code Ann. § 311.002 (1988).

individuals against whom liability is sought. *Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex.App.1985, writ ref'd n.r.e.). When construing a statute, the court must read words according to their ordinary meaning unless a contrary intent is apparent from the context. *Taylor*, 616 S.W.2d at 189.

We have reviewed the text of the current Act as well as the title, preamble and emergency provisions of predecessor versions of the Act. We are also guided by those court decisions enunciating the purposes of the Act and § 171.255 in determining the legislature's intent and the construction to be given the statute.

The original Act provided for a franchise tax to be paid by private, domestic and foreign corporations for the privilege of doing business within the State of Texas. It provided penalties for failure to make prompt payment of such taxes and imposed liability on officers and directors for debts knowingly and consensually created or incurred after forfeiture of the corporation's right to do business. The original Act also prohibited officers and stockholders of the defaulting corporation from doing business in or under the corporate name. This provision has not survived. *See* Franchise Tax Act, 1907 Tex.Gen.Laws, 1st C.S., ch. 23, §§ 1, 2, 3, 8 & 12 at 502–04, 505, 507 (since amended, codified, repealed and now recodified at Tex.Tax Code Ann. §§ 171.001, 171.255, & 171.362, §§ 171.001 and 171.362 since amended).[10]

Section 8 of the original Act made corporate officers liable for corporate debts knowingly and consensually created or incurred after forfeiture of corporate privileges and before revival of the right to do business. Some version of this provision has been embodied in every subsequent codification of the Franchise Tax Act, down to the current § 171.255.

### D. Purposes of the Act

■ The franchise tax is a tax on the privilege of transacting business within Texas. *Sunoco Terminals, Inc. v. Bull-*

*ock*, 756 S.W.2d 418, 420 (Tex.App.1988, no writ). The clear purpose of the law is to levy a franchise tax on each and every corporation that is chartered in the state. The inescapable conclusion is that this statute was enacted solely for the purpose of raising revenue. The penalties imposed for failure to pay the franchise tax are heavy, and were evidently provided to hasten payment and to inflict punishment on delinquent corporations. *Ross Amigos*, 138 S.W.2d at 800. Although business transacted during the time of such forfeiture is not void, certain rights or privileges are taken away: the corporation is denied the right to sue or defend in state court and the directors and officers are deprived of the corporate shield against personal liability for certain corporate debts. *Id.;* Tex. Tax Code Ann. §§ 171.252, 171.255 (1982).

The supreme court has commented on the purpose of the predecessor to § 171.-255, "The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Schwab*, 198 S.W.2d at 81. Travelcorp continued to employ people after forfeiting its corporate privileges; it continued to incur liability for contributions to the Unemployment Compensation Fund. Tex.Rev.Civ.Stat.Ann. § 5221b–5(a) (1987). We believe that the legislative purpose of the section would not be furthered by a definition of the term debt that excluded the officers and directors' liability for unpaid obligations to the Texas Employment Commission. We do not violate the clear import of § 171.255's language to construe "debt" to include liability for unemployment contributions.

Appellant argues that a strict construction requires us to hold that the term "debt" does not include the unemployment contributions at issue here. Section 171.-255 specifically states that in the event of forfeiture, each director and officer's liability includes liability for franchise taxes imposed by this chapter. Appellant argues

---

**10.** The 72nd legislature has also added a punishment provision for wilful and fraudulent attempts to evade or defeat imposition or pay- ment of franchise taxes. Tex.Tax Code Ann. § 171.363 (Supp.1992) (effective January 2, 1992).

that by this specific inclusion of franchise taxes the legislature impliedly intended to exclude directors and officers' liability for all other taxes, such as unemployment contributions. We disagree. Section 311.-005(13) of the Code Construction Act provides that "includes" is a term of enlargement and not a term of limitation or exclusive enumeration. Use of the term "includes" does not create a presumption that unlisted items are excluded. Tex.Gov't Code Ann. § 311.005(13) (Supp.1992). If anything, this inclusion of liability for franchise taxes supports our view that the legislative goals of raising revenue through the prompt payment of franchise taxes and protecting the public and those dealing with the corporation require the construction we have given the term "debt" when the forfeiture of corporate privileges is imposed as a penalty for failure to pay franchise taxes. We hold that as used in § 171.255, the term "debt" was intended to encompass the obligation to pay contributions to the Unemployment Compensation Fund. Appellant's first point is overruled.

## IV. REMAINING POINTS OF ERROR

### A. Preservation of Error

■ Appellant has combined her argument and authorities under her two remaining points of error. In her second point of error appellant argues the trial court erred in granting the State's motion for summary judgment because the State failed to offer proof that the obligations to pay unemployment contributions were *created or incurred* after the date of forfeiture.[11] The date of forfeiture, however, is not the critical date because personal liability for corporate debts attaches for debts created or incurred *after* the date the franchise taxes were due but *before* corporate privileges are revived. Upon forfeiture of Travelcorp's privileges, the directors and officers became personally liable for debts created

or incurred after March 15, 1986, the franchise tax due date. We will treat appellant's point as an attack on the State's failure to offer evidence that the obligation to pay unemployment taxes was created or incurred after the date the franchise taxes were due. *See O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976) (rule of liberal construction applies to points in appellant's brief; merits of error will be passed on in light of the statement and arguments).

In her third point of error appellant asserts the trial court erred in granting the State's motion for summary judgment in the amount of $11,320.80 because there was no summary judgment evidence as to the date the tax liability was created or incurred.

■ The State argues that appellant did not preserve error on these points because she did not raise these arguments in her response to appellee's motion for summary judgment or in her cross-motion for summary judgment. Tex.R.Civ.P.Ann. 166a(c) (Supp.1991). In her cross-motion for summary judgment appellant plead, in pertinent part:

Section 171.255(a) Texas Tax Code, expressly imposes personal liability on corporate officers for debt of the corporation incurred subsequent to forfeiture of a corporate charter. Further § 171.-255(a) provides that the liability includes franchise taxes or penalties imposed on the corporation that become due and payable after the date of foreclosure. The "debt" for which the State of Texas seeks to hold Defendant Wilburn liable is for unemployment taxes imposed upon Defendant Travelcorp under the Texas Unemployment Compensation Statute. As is set forth in Defendant Wilburn's Response to Plaintiff's Motion for Summary Judgment and Brief in Support

---

**11.** Appellant rephrases her second point of error later in her brief: "The Trial Court erred in granting the STATE'S Motion for Summary Judgment because the STATE failed to offer evidence that the obligations to pay Unemployment Taxes *accrued* after the date of forfeiture." The date of accrual is only relevant if it is

synonymous with the date the tax debt was created or incurred. The State made no such argument in its motion for summary judgment and there is nothing in the record to indicate this forms a basis for the judgment. We address the second point as indicated, *infra*.

Thereof, unemployment compensation taxes do not fall within the purview of "debt" as recognized in Texas Law. Further, the taxes for which Plaintiff seeks to hold Defendant Wilburn liable are not taxes or penalties imposed under the Franchise Tax Statutes that became due and payable after the date of Defendant Travelcorp International, Inc.'s forfeiture. Therefore, Defendant Wilburn is not liable for the unemployment taxes imposed upon Defendant Travelcorp under the Texas Unemployment Compensation Statute.

We have already held that the unemployment contributions are a "debt" within the meaning of § 171.255. The only remaining argument appellant raised in the trial court was that she is not liable for the taxes because they are not taxes or penalties *imposed by the Franchise Tax Act* that become due and payable after the date of forfeiture. In her response and cross-motion appellant failed to raise the arguments that the obligation to pay *unemployment contributions* was not "created or incurred after the date of forfeiture," or that "there was no summary judgment evidence as to the date the tax liability was created or incurred."

Nevertheless, Wilburn needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the State's motion are insufficient as a matter of law to support the summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). No answer or response being necessary to raise a legal sufficiency challenge, it follows that the failure to raise such a challenge in her response or cross-motion does not preclude her raising it on appeal. And this is precisely what her second point of error does.[12]

■ Even if appellant were precluded from raising these points, it would still be this Court's duty to determine if the State is entitled to summary judgment as a matter of law. The State must establish its entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of its cause of action as a matter of law. *Clear Creek*, 589 S.W.2d at 678. The date the debt was created or incurred is an essential element of the State's cause. It was the State's burden conclusively to show that the unemployment-contributions debt was either *created or incurred* after the date the franchise taxes became due, March 15, 1986.

### B. Holding

■ The word "create" means to bring into existence something which did not exist. The word "incur" is defined as brought on, occasioned, or caused. *Schwab*, 198 S.W.2d at 81. Article 5221b–5(a) of the Texas Unemployment Compensation Act recites, in pertinent part:

Contributions shall accrue and become payable by each employer for each calendar year, or portion thereof, in which he is subject to this Act, with respect to *wages for employment paid during such calendar year or portion thereof.*[13] Such contributions shall become due and be paid to the Commission for

---

**12.** Appellant's third point may also be construed as a legal sufficiency challenge. In its brief, and at oral argument, the State asserted that appellant's third point of error was an attack on the amount of the judgment and that she was precluded from raising this point because she had failed to file a sworn denial as required by Tex.Rev.Civ.Stat.Ann. art. 5221b–12(e). Under Article 5221b–12(e), unless appellant files a sworn denial, the State's Exhibit "A," which evidences the unemployment contributions debt, is taken as prima facie evidence that the debt is past due and unpaid and all just and lawful offsets, payments, and credits have been allowed. The provision further provides that, in the absence of a sworn denial, appellant cannot deny the claim for contributions, penalties, or interest or any portion thereof. 1957 Tex.Gen. Laws, ch. 460, § 14, at 1357, (Tex.Rev.Civ.Stat. Ann. art. 5221b–12(e), since amended). While appellant may be precluded from attacking the amount of the judgment, she is not precluded from asserting that there is no evidence as to the date the tax liability was created or incurred, because this is a challenge to the legal sufficiency of the summary judgment proof.

**13.** The calendar year is the period from January 1 to December 31 inclusive. Black's Law Dictionary 204 (6th ed. 1990).

the fund in accordance with such rules or regulations as the Commission may prescribe.

Tex.Rev.Civ.Stat.Ann. art. 5221b–5(a) (1987) (emphasis added). The amount of contributions an employer is obligated to pay is based on the wages for employment paid during the calendar year or portion thereof.

Appellant argues that the taxes are created or incurred and become due on each day a person is employed and that she is liable, if at all, only for contributions that became due upon the completion of each day's work after March 16, 1986. Under appellant's interpretation, the liability for contributions would be computed on a daily basis in order to determine which taxes were created or incurred after the date the franchise taxes were due. This approach ignores the clear language of article 5221b–5(a), which bases liability for contributions on wages actually paid, and would create an administrative nightmare unless Travelcorp paid employee wages on a daily basis. We decline to adopt appellant's interpretation of when the debt is created or incurred.

In its amended motion for rehearing, the State argues that while the debt is created when wages are paid, it is incurred when contributions are due.[14] The State essentially is arguing that the debt is created by one event, but incurred by another. We are aware of the distinction. However, for the reasons stated below, we believe the same event both "creates" and "incurs" the debt.

According to the State's argument, appellant is liable for contributions based on wages paid during the first two quarters of 1986, including those contributions based on wages that were paid before March 16, 1986, because the *unemployment-contributions due date* occurred after that date. To establish the contributions due date, the State directed this Court to Employment Commission Rule 301.9, which provides, in pertinent part:

> Contributions shall accrue quarterly and shall become due on the first day of the month immediately following such calendar quarter. They shall be paid to the commission on or before the last day of such month.

Tex. Employment Comm'n, 7 Tex.Reg. 2630 (1982) (40 T.A.C. § 301.9, since amended), adopting 7 Tex.Reg. 2107 (proposed rule). The State asserts that this rule establishes that the due dates for the taxes are April 1 and July 1, respectively, for the first and second quarters of 1986, both of which occur after the franchise tax due date.

The agency rule was not before the trial court as part of the State's summary judgment proof. However, Tex.Rev.Civ.Stat. Ann. art. 6252–13b, § 4 provides that the rules of agencies published in the Texas Administrative Code are to be judicially noticed and constitute *prima facie* evidence of the text of the documents.[15] Pur-

---

**14.** As support for this argument, the State cites *Cowan Boat Transfer v. Texas Employment Com'n*, 789 S.W.2d 405 (Tex.App.1990, dism. agr.). In *Cowan*, the employment commission had determined that contract truck drivers were in the employ of the appellant. Consequently, Cowan became an employer subject to the Unemployment Compensation Act for purposes of unemployment-tax contributions. Nevertheless, Cowan did not pay estimated unemployment-tax contributions. At issue was whether Cowan was obligated to pay the estimated tax contributions in the absence of a formal assessment by the commission. *Cowan*, 789 S.W.2d at 407. This court concluded that the statutory tax contributions were alleged to be due, for purposes of tax liability arising under the Act, when the Commission made its notification and ruling. Consequently, a formal assessment was not a prerequisite to Cowan's obligation to pay the tax liability. *Id.* *Cowan* does not stand for the proposition that the tax liability is created or incurred when due. Nor does *Cowan* hold that the tax determination occurs when employment taxes are reported; the determination that Cowan was liable for contributions occurred when the Commission determined it was an employer of the truck drivers.

**15.** Section 4 provides:

> The codified rules of the agencies published in the Texas Administrative Code, as approved by the secretary of state and as amended by documents subsequently filed with the office of the secretary of state, are to be judicially noticed and constitute prima facie evidence of the text of the documents and of the fact that they are in effect on and after the date of notation.

Tex.Rev.Civ.Stat, Ann. art. 6252–13b, § 4 (Supp. 1992)

suant to Tex.R.Civ.Evid.Ann. 204 (Pamph. 1991), we take judicial notice of the rule and the due dates it establishes.

Nevertheless, we decline to hold that the debt is incurred when contributions are due because to do so would hold officers and directors personally liable for a corporate debt that is based, at least in part, on wages paid before the date the franchise taxes were due. For example, while the first quarter contributions are due April 1, they are based on wages paid between January 1 and March 30. If the debt were incurred when "due," Wilburn would be held personally liable for contributions that are based, in part, on wages paid before March 15, 1986. We believe the State's construction would extend officer and director liability beyond that contemplated by the legislature when it enacted § 171.255.

We hold that when a party relies on § 171.255 to hold an officer or director of a corporation personally liable for unemployment-tax contributions, the debt (the obligation to pay contributions to the Unemployment Compensation Fund) is created or incurred when wages are actually paid. The payment of wages is the event that both creates (brings into existence) and incurs (brings on or occasions) the employ-ment-tax liability. Absent payment of employment wages, there is no employment-tax liability.

Article 5221b–5(a) provides, in pertinent part, that "contributions accrue and become payable by each employer for each calendar year, or portion thereof, ... with respect to wages for employment paid *during* such calendar quarter or portion thereof." Tex.Rev.Civ.Stat.Ann. art. 5221b–5(a) (1987). The State's exhibit "A," which is a sworn statement and is attached to its motion for summary judgment, reflects "total taxable wages" for the first and second quarters.[16] Since the total taxable wages for each quarter are presumed to include the wages for employment paid *during* that quarter, we may conclude from the State's exhibit "A" that these wages were paid on payroll dates occurring during the quarter (i.e. wages are paid on payroll dates, therefore wages paid during each quarter are paid on payroll dates that occur during the quarter). Accordingly, appellant is liable only for contributions based on wages paid on payroll dates occurring after March 15, 1986 and before August 13, 1986, when the corporate privileges were revived.[17]

16. The State has requested that we take judicial notice of Texas Employment Rule 301.7(b). Rule 301.7(b) provides, in pertinent part:

Each taxed employer shall submit to the commission, within the month during which contributions for any period become due, and not later than the date on which contributions are required to be paid to the commission, an employer's quarterly report ... showing the total amount of wages (as defined in subsection 19(n) of the Act) paid during such quarter for employment, ... and showing other information called for on the employer's quarterly report form printed by the commission. The employer's quarterly report shall be made on commission forms and shall contain all facts and information necessary to a determination of the amount of contributions due.

Tex.Employment Comm., 7 Tex.Reg. 2630 (1989) (40 Tex.Admin.Code § 301.7(b), since amended), *adopting* 7 Tex.Reg. 2107 (proposed rule). The reporting scheme mandated by rule 301.7(b) provides for a lump sum accounting of wages paid for employment during each quarter. The State represents that contributions due are also reported on a lump sum basis. Pursuant to Tex.R.Civ.Evid.Ann. 204 (Pamph.1991), we take judicial notice of the rule.

17. Our holding is consistent with the requirement that we strictly construe § 171.255 to protect the individual against whom liability is sought. *Rogers*, 696 S.W.2d at 677. It does not ignore the administrative scheme created by the Commission, nor does it require the State to conduct an audit or maintain an action at law in order to ascertain what portion of the contributions, in a quarter where franchise taxes are due, is based on employment wages paid after the franchise tax due date. We believe that, under Rule 301.7(b), the Commission has the power to require an employer to segregate that portion of wages paid for employment between January 1 and the franchise tax due date from that portion of employment wages paid after the franchise tax due date and until the end of the first quarter.

Furthermore, our holding is consistent with the purpose of § 171.255. *Schwab*, 198 S.W.2d at 81 (statute meant to prevent wrongful acts of culpable officers of a corporation and protect the public and those dealing with corporation). If the State had met its burden to show the amount of first quarter contributions and penalties that are based on wages paid after March 15, 1986, Wilburn would be personally liable for those amounts.

## C. First Quarter Contributions and Penalties

■ The first calendar quarter commences January 1 and ends March 30. The State's claim for first quarter contributions and penalties is based on wages paid during the first quarter. The State's exhibit "A" reflects contributions and penalties due for the first calendar quarter ($7556.69). Exhibit "A" does not segregate that portion of first quarter contributions and penalties due that is based on wages paid after March 15, 1986, the franchise tax due date. Appellant is liable for only that portion of first quarter contributions and penalties that is based on wages paid after March 15, 1986. Therefore, the State has not met its burden to show that it is entitled as a matter of law to that portion of the judgment against appellant that is based on its claim for first quarter contributions and penalties, because it can not be determined from the summary judgment proof what portion of the first quarter contributions and penalties due is based on wages paid after March 15, 1986.

## D. Second Quarter Contributions and Penalties

■ The second quarter of the calendar year commences on April 1 and ends June 30. Therefore, all wages paid during the second quarter were paid after March 15, 1986, the date the franchise taxes were due, and before August 13, 1986, the date the corporate privileges were revived. The State's exhibit "A" reflects the amount of contributions and penalties due for the second calendar quarter. The State has shown that its claim for the second quarter contributions and penalties is based on wages paid after March 15, 1986. The State has established that the second calendar quarter portion of the debt was created or incurred after the date the franchise taxes were due. Furthermore, Article 5221b–12(e) provides that exhibit "A," which is a sworn statement, is *prima facie* evidence "that the contributions, penalties or interest shown to be due by said statement, ... are, within the knowledge of the Affiant, past due and unpaid," unless a sworn answer to the contrary is filed.

1957 Tex.Gen.Laws, ch. 460, § 14, at 1357 (Tex.Rev.Civ.Stat.Ann. art. 5221b–12(e), since amended). Appellant did not file a sworn answer. The State has met its burden to show that it is entitled as a matter of law to that portion of the judgment against appellant that is based on second quarter contributions and penalties due in the amount of $3,764.11.

## E. Conclusion

The trial court granted the State's motion for summary judgment and ordered that the State recover from Wilburn the amount of $11,320.80, representing the contributions and penalties for the first and second quarters of 1986. The judgment shows that the amount of contributions and penalties due for the first quarter is $7,556.69. We have determined, however, that the State did not show it was entitled, as a matter of law, to that portion of the judgment. Accordingly, in our judgment issued on November 13, 1991, we reversed and remanded the portion of the summary judgment that awarded the State contributions and penalties totalling $11,320.80. The State then filed a voluntary remittitur in the amount of $7,556.69. Tex.R.App. P.Ann. 85(e) (Pamph.1991). Because this Court is of the opinion that the remittitur cures the reversible error, we accept the remittitur and modify the trial-court judgment accordingly. Rule 85(e).

The judgment of the trial court in favor of the State of Texas and against Phyllis Wilburn is reduced by the amount of $7,556.69 to award the State recovery in the amount of $3,764.11 against Phyllis Wilburn. As so modified, the judgment is affirmed.