Opinion issued October 6, 2005





     










In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00083–CV




TRI-STATE BUILDING SPECIALTIES, INC. d/b/a WESTERN GARAGE
DOORS, SUSAN HOLLISTER, AND JENNIE BUSH, Appellants

V.

NCI BUILDING SYSTEMS, L.P. d/b/a ABLE DOOR MANUFACTURING,
Appellee




On Appeal from the 190th District Court 
Harris County, Texas
Trial Court Cause No. 2004–34191






O P I N I O N 

          Presenting a single issue, with two sub-issues, appellants, Tri-State Building
Specialties, Inc. d/b/a Western Garage Doors (“Tri-State”), Susan Hollister
(“Hollister”), and Jennie Bush (“Bush”), contend that the trial court erred in denying
their special appearance,


 which they filed in a suit brought against them by appellee,
NCI Building Systems, L.P. d/b/a Able Door Manufacturing (“NCI”). 
          We affirm in part and reverse and render in part.
Factual and Procedural Background
          Tri-State is a California corporation with its principal office located in
Oceanside, California. Hollister is the president of Tri-State and Bush is its vice-president. Both Hollister and Bush are residents of California. 
          Tri-State purchased garage doors from Able Doors, a California company. At
some point, Able Doors filed for bankruptcy protection and its assets were purchased
by NCI. On March 12, 2004, Tri-State and NCI entered into a contract, entitled
“Application for Credit,” which set forth the terms and conditions by which NCI would
make sales to Tri-State. Included in the agreement was a forum selection clause,
providing that all claims and disputes arising out of any transactions between NCI and
Tri-State would be brought in state court in Harris County, Texas.
          On June 29, 2004, NCI filed suit against appellants, presenting claims for “suit
on account” and for breach of contract. NCI alleged that appellants had not paid it for
goods and services provided to Tri-State by NCI on an open account and pursuant to
a contract. NCI claimed an outstanding balance of $90,502.37. NCI’s claims were
supported by “Exhibit A,” which was appended to the petition and expressly
incorporated into it by reference. Included in the exhibit were (1) the affidavit of NCI’s
credit manager, averring that the amount due on the account was $90,502.37, (2) an
“Accounts Receivable Aged Invoice Report,” itemizing and detailing the transactions
between NCI and Tri-State between the dates of December 16, 2003 and April 23,
2004, and (3) a copy of the Application for Credit. 
          Appellants did not file an answer, and NCI obtained a default judgment against
them on October 25, 2004. On November 24, 2004, appellants filed a special
appearance, and subject to the special appearance, a motion for new trial, a motion to
quash defective service, and an original answer. Appellants filed an amended special
appearance on December 16, 2004 and, subject to the special appearance, also
amended their answer and the various, previously filed motions. 
          In the amended special appearance, appellants averred that Tri-State is a
California company, with its corporate office in Oceanside, California. Tri-State
conceded that, pursuant to the forum selection clause in the Application for Credit, it
was subject to the jurisdiction of the trial court for those claims arising from
transactions between it and NCI that postdate the signing of the Application for Credit
on March 12, 2004. Conversely, Tri-State asserted that the trial court lacked personal
jurisdiction over it for claims arising from transactions predating March 12, 2004. Tri-State stated that “$42,762.62 worth of [NCI’s] claims fall outside the jurisdiction” of
the trial court, i.e., those sums owed for transactions predating March 12, 2004. Tri-State asserted that it had consented to venue in Texas only for claims arising after
March 12, 2004. 
          Hollister and Bush contested the trial court’s in personam jurisdiction as to the
entire proceeding, asserting that they had no contacts with Texas to support jurisdiction
over them. Hollister and Bush also asserted that they are “merely employees” of Tri-State and, as such, could not be held personally liable for Tri-State’s debts. The
amended special appearance was supported by the affidavits of Hollister and Bush.
          NCI filed a response to the amended special appearance, contending that Tri-State had “substantial and numerous contacts with Texas.” NCI cited to the
Application for Credit, appended to its original petition. NCI also asserted that Tri-State had sufficient minimum contacts with Texas before the signing of the March 12,
2004 Application for Credit. In this regard, NCI referenced Tri-State’s own allegations
in its amended motion for new trial and Exhibit A, attached to NCI’s original petition. 
NCI alleged that the amended motion for new trial and Exhibit A evidenced that Tri-State engaged in communications and transactions in Texas before March 12, 2004. 
          NCI also asserted that Hollister and Bush were, as individuals, subject to the
jurisdiction of Texas courts because “Tri-State is not a viable corporation and its
corporate privileges have been suspended by the California Secretary of State. It is
well-established that officers and directors are personally and individually liable for
debts of the ‘corporation’ when that corporation’s corporate privileges are suspended
or revoked.” In support of this assertion, NCI cited both the Texas and California tax
codes. Attached to its response, NCI offered a certificate from the California Secretary
of State, indicating that Tri-State’s corporate powers had been suspended. 
          At the special appearance hearing, appellants argued that NCI had pled no
jurisdictional facts in its original petition, the live pleading at the time. Appellants
argued that, because no jurisdictional facts had been pled by NCI, the only burden that
they were required to meet was to show that they were not residents of Texas. 
Appellants contended that they had met this burden. NCI responded, inter alia, that
Tri-State’s special appearance should be denied based on the forum selection clause
in the Application for Credit. NCI reiterated that Hollister and Bush were liable as
officers because Tri-State’s corporate privileges were suspended. 
          Following the hearing, the trial court signed an order denying appellants’ special
appearances.


 This appeal ensued. Appellants bring one issue, with two sub-issues,
contending that the trial court erred in denying their special appearances. 
Standard and Scope of Review
          “[P]ersonal jurisdiction concerns the court’s power to bind a particular person
or party.” CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding). A
special appearance is used to challenge the trial court’s jurisdiction over the person
based on the claim that such person is not amenable to process in this State. See Tex.
R. Civ. P. 120a.
          Whether a court has personal jurisdiction over a defendant is a question of law.
American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805–06 (Tex. 
2002); BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 
But in resolving this question of law, a trial court must frequently resolve questions of
fact. Coleman, 83 S.W.3d at 806; BMC, 83 S.W.3d at 794. On appeal, the trial
court’s determination to grant or deny a special appearance is subject to de novo
review; however, appellate courts may be called upon to review the trial court’s
resolution of a factual dispute. Coleman, 83 S.W.3d at 806; BMC, 83 S.W.3d at 794. 
If the trial court does not issue findings of fact, reviewing courts should presume that
the trial court resolved all factual disputes in favor of its judgment. Coleman, 83
S.W.3d at 806; BMC, 83 S.W.3d at 795. But these implied findings are not conclusive
and may be challenged on appeal for legal and factual sufficiency, if the appellate
record includes the reporter’s and clerk’s records. BMC, 83 S.W.3d at 795.
                           In Personam Jurisdiction Over Tri-State 
          In the first sub-issue, Tri-State contends that its special appearance should have
been granted because (1) NCI’s original petition alleged no jurisdictional facts and (2)
Tri-State proved it is a nonresident. We disagree. 
          The plaintiff bears the initial burden of pleading sufficient allegations to bring a
nonresident defendant within the provisions of the Texas long-arm statute. Id. at 793. 
A nonresident defendant challenging personal jurisdiction through a special appearance
carries the burden of negating all bases of personal jurisdiction. Id. 
          Here, NCI expressly incorporated Exhibit A, which included the Application for
Credit, into its original petition.


 In support of its amended special appearance, Tri-State offered uncontested evidence that it was not a Texas resident. Tri-State also
relied on the Application for Credit to support its contention that, though the trial court
had jurisdiction over it for post March 12, 2004 claims, Tri-State was not amenable to
process issued by a Texas court for pre-March 12th claims. In its response, NCI cited
the Application for Credit as supporting jurisdiction. At the special appearance
hearing, NCI argued that, based on the forum selection clause, Tri-State had consented
to jurisdiction in Texas. 
          Rule 120a(3) provides that “[t]he court shall determine the special appearance
on the basis of the pleadings, any stipulations made by and between the parties, such
affidavits and attachments as may be filed by the parties, the results of discovery
processes, and any oral testimony.” Tex. R. Civ. P. 120a(3). Here, both sides relied
on, and cited to, the Application for Credit, an attachment to the original petition
incorporated into that pleading by reference. Under rule 120a, it was appropriate for
the trial court to consider the Application for Credit and its forum-selection clause in
determining whether it should grant Tri-State’s special appearance. 
          In the Application for Credit’s forum selection clause, Tri-State expressly agreed
as follows:
Any disputes under this agreement shall only be brought in state
court in the state of Texas. The parties hereto agree and stipulate that
venue shall be in Houston, Harris County, Texas, for any and all claims
and disputes arising out of all transactions between [NCI] and [Tri-State]. [Tri-State] voluntarily agrees that Houston, Harris County, Texas,
is the most convenient forum and understands the choice of forum is an
integral part and vital part of [NCI’s] agreement to sell to [Tri-State]. By
agreeing to venue in Houston, Harris County, Texas, [Tri-State] fully
intends to waive its rights, if any, to venue in any place other than
Houston, Harris County, Texas. The parties deem that this agreement is
performable by [NCI] in Houston, Harris County, Texas whether or not
any part of this agreement is actually performed in Houston, Harris
County, Texas. In addition, [Tri-State] agrees that [NCI’s] prices reflect
an analysis of the elimination of uncertainty regarding the jurisdiction for
any dispute. 
(Emphasis added.) The dispositive question that we answer is whether the trial court
could have properly denied Tri-State’s special appearance based on the forum-selection
clause. See Ace Ins. Co. v. Zurich Am. Ins. Co., 59 S.W.3d 424, 428 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied) (considering issue of consent to personal
jurisdiction to be dispositive). 
          Two conditions must be met before a Texas court can exercise personal
jurisdiction over a nonresident defendant such as Tri-State: the Texas long-arm statute
must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be
consistent with the guarantees of due process. BMC, 83 S.W.3d at 795; Schlobohm v.
Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). Because the language of the long-arm
statute is broad, its requirements are considered satisfied if the exercise of personal
jurisdiction comports with federal due process limitations. CSR, 925 S.W.2d at 594. 
In practice, the two conditions are conflated into one requirement of due process. 
Wright v. Sage Eng’g, Inc., 137 S.W.3d 238, 247 (Tex. App.—Houston [1st Dist.]
2004, pet. denied). Thus, the true determinative inquiry is one of federal constitutional
due process. See id.; see also Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).
          Unlike subject matter jurisdiction, personal jurisdiction is a waivable right. 
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14, 105 S. Ct. 2174, 2182 n. 14
(1985); Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée, 456 U.S. 694,
703–05, 102 S. Ct. 2099, 2105 (1982); Abacan Technical Servs. Ltd. v. Global Marine
Int’l Servs. Corp., 994 S.W.2d 839, 843–45 (Tex. App.—Houston [1st Dist.] 1999, no
pet.). If a party signs a contract with a forum selection clause, then that party has either
consented to personal jurisdiction or waived the requirements for personal jurisdiction
in that forum. Burger King, 471 U.S. at 473 n.14, 105 S. Ct. at 2182 n.14; Compagnie
des Bauxites de Guinée, 456 U.S at 703–05, 102 S. Ct. at 2105; see Nat’l Equip.
Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S. Ct. 411, 414 (1964) (stating that
“[I]t is settled . . . that parties to a contract may agree in advance to submit to the
jurisdiction of a given court . . .”). This rule is a manifestation of the principle that
personal jurisdiction is a legal right protecting the individual, not a limitation on the
power of a court. Compagnie de Bauxites de Guinée, 456 U.S. at 704, 102 S. Ct. at
2105. As such, a party may bargain such right away when that party perceives the
bargain as advantageous. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585,
593–94, 111 S. Ct. 1522, 1527 (1991) (recognizing that forum selection clause may
benefit both parties through economies due to certainty and avoidance of multiple fora). 

          In a commercial context, as here, parties frequently “stipulate in advance to
submit their controversies for resolution within a particular jurisdiction,” for business
or convenience reasons. Burger King, 471 U.S. at 473 n.14, 105 S. Ct. at 2182 n.14.
Forum-selection clauses “are prima facie valid and should be enforced unless
enforcement is shown by the resisting party to be ‘unreasonable’ under the
circumstances.” M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907,
1913 (1972); see also Burger King, 471 U.S. at 473 n.14, 105 S. Ct. at 2182 n.14.
The party opposing enforcement of the forum-selection clause carries a “heavy burden”
of showing that the forum-selection clause should not be enforced. M/S Bremen, 407
U.S. at 15, 18, 92 S. Ct. at 1916, 1917. A forum selection clause will be invalidated
only (1) if it was the product of fraud or overreaching, (2) if the agreed forum is so
inconvenient as to deprive the litigant of his day in court, or (3) if enforcement would
contravene a strong public policy of the forum in which the suit is brought. Id., 407
U.S. at 15, 92 S. Ct. at 1916; Abacan Technical Servs., 994 S.W.2d at 844.
          In this case, Tri-State did not challenge the validity of the forum-selection clause. 
To the contrary, Tri-State relied on the clause when conceding that it was subject to the
trial court’s jurisdiction for claims that post-date March 12, 2004. Tri-State has not
explained why the forum selection clause does not apply to pre-March 12, 2004 claims. 
In particular, Tri-State has not addressed the following language of the forum-selection
clause: 
The parties hereto agree and stipulate that venue shall be in Houston,
Harris County, Texas, for any and all claims and disputes arising out of
all transactions between Seller [NCI]


 and Buyer [Tri-State]. . . . Tri-State agrees that NCI’s prices reflect an analysis of the elimination of
uncertainty regarding the jurisdiction for any dispute. 

(Emphasis added.) Such express language supports the contention that the forum-selection clause applies to all of NCI’s claims against Tri-State. 
          Tri-State also does not assert that application of the forum-selection clause to the
pre-March 12, 2004 claims would be unreasonable. Indeed, the plain and unequivocal
language of the Application for Credit shows that the clause was freely negotiated and
that the clause is mutually beneficial to both parties. Tri-State agreed that “Houston,
Harris County, Texas is the most convenient forum and understands the choice of
forum is an integral part and vital part of [NCI’s] agreement to sell to Tri-State.” Tri-State further agreed that “[NCI’s] prices reflect an analysis of the elimination of
uncertainty regarding the jurisdiction for any dispute.” Tri-State acknowledged that,
“By agreeing to venue in Houston, Harris County, Texas, [Tri-State] fully intends to
waive its rights, if any, to venue in any place other than Houston, Harris County,
Texas.” Tri-State also presented no arguments or evidence that (1) the clause was the
product of fraud or overreaching, (2) “Houston, Harris County, Texas” is so
inconvenient as to deprive Tri-State of its day in court, or (3) enforcement would
contravene a strong public policy of the forum. See M/S Bremen, 407 U.S. at 15, 92
S. Ct. at 1916. 
          We conclude that Tri-State did not negate all possible grounds for jurisdiction,
and, more specifically, that it consented to jurisdiction. We hold that the trial court
properly denied Tri-State’s special appearance. 
          We overrule Tri-State’s sub-issue that the trial court improperly denied its
special appearance. 
In Personam Jurisdiction Over Hollister and Bush
          In the second sub-issue, Hollister and Bush challenge the trial court’s denial of
their special appearance, contending that NCI failed to sufficiently show that they were
individually liable for NCI’s claims against Tri-State. We agree.
          In its response to the amended special appearance, NCI contended that Hollister
and Bush were individually liable for NCI’s claims because Tri-State’s corporate
privileges had been suspended. Specifically, NCI asserted, “[A]bsent evidence that
Tri-State is a viable corporation, Defendants Bush and Hollister are personally and
individually liable for debts incurred by Tri-State when the corporation’s corporate
privileges are suspended or revoked.” 
          As discussed above, a nonresident defendant has the burden to negate all bases
for personal jurisdiction. BMC, 83 S.W.3d at 793. One exception to that rule arises
when the claimant asserts that personal jurisdiction exists based on an alter-ego theory. 
See id. at 798–99. The Texas Supreme Court has held that jurisdiction based on an
alter ego theory cannot be found unless “[t]he party seeking to ascribe one
corporation’s actions to another by disregarding their distinct corporate entities
[proves] this allegation.” Id. at 798. The underlying reason for shifting the burden to
the claimant is that “Texas law presumes that two separate corporations are indeed
distinct entities . . . .” Id. Though it was reached in the context of an assertion of alter
ego and was based on the presumption of separate identity between corporations, the
holding can logically be extended to the assertion of officer liability made in this case. 
This is because the same presumption of legal separateness exists with regard to a
corporation and its officers. See Pabich v. Kellar, 71 S.W.3d 500, 507 (Tex.
App.—Fort Worth 2002, pet. denied) (“A corporation is a separate legal entity that
normally insulates its owners or shareholders from personal liability.”); Wynne v.
Adcock Pipe and Supply, 761 S.W.2d 67, 68 (Tex. App.—San Antonio 1988, writ
denied) (“The legal concept that a corporation is a distinct entity separate from its
stockholders, officers and directors is fundamental to the law of corporation.”). 
          To support its assertion of officer liability, NCI relied on Texas Tax Code
subsection 171.255(a), which provides as follows:
If the corporate privileges of a corporation are forfeited for the failure to
file a report or pay a tax or penalty, each director or officer of the
corporation is liable for each debt of the corporation that is created or
incurred in this state after the date on which the report, tax, or penalty is
due and before the corporate privileges are revived.
Tex. Tax Code Ann. § 171.255(a) (Vernon 2002). 
          In this case, NCI seeks to recover monies owed for transactions that, according
to its own petition, occurred between December 16, 2003 and April 23, 2004. Officers’
liability for payment corporate debts attaches to debts created or incurred after the date
that “the report, tax, or penalty” was due. Id.; see Wilburn v. State, 824 S.W.2d 755,
762 (Tex. App.—Austin 1992, no writ). Thus, to hold Hollister and Bush personally
liable for any of the claims arising from these transactions, NCI was required to show
that the report, tax, or penalty, which led to the suspension of Tri-State’s corporate
privileges, was due no later than April 23, 2004. See Wilburn, 824 S.W.2d at 762
(holding directors and officers became personally liable for debts created or incurred
after franchise tax due date); see also State v. Serna, 877 S.W.2d 516, 519 (Tex.
App.—Austin 1994, writ denied) (recognizing that contractual obligations entered into
before forfeiture of corporate privileges do not impose liability on officers or directors
for payments that are due after forfeiture). 
          In support of its assertion, NCI offered a “Domestic Corporation Certificate of
Filing and Suspension” (“the certificate”) from the California Secretary of State, which
stated, inter alia, as folllows:
I, KEVIN SHELLEY, Secretary of State of the State of California,
hereby certify:

          . . . .
That on June 1, 2004, pursuant to the provisions of the California
Bank and Corporation Tax Law, more particularly Section 23302 of the
Revenue and Taxation Code, the Franchise Tax Board transmitted a list
to this office containing the names of domestic corporations, the exercise
of whose corporate powers, rights and privileges had been suspended
under the law, which included [Tri-State].

Although it evidences that the Franchise Tax Board forwarded a list to the California
Secretary of State on June 1, 2004, identifying Tri-State as a suspended corporation,
the certificate offered by NCI does not show the date on which the report, tax, or
penalty at issue was due, the relevant date under Tax Code subsection 171.255(a). 
Tex. Tax Code Ann. § 171.255(a). 
          In addition, NCI failed to offer proof that Tri-State’s corporate privileges had
been “forfeited” as required by subsection 171.255(a). Id. Rather, the certificate
offered by NCI evidenced that Tri-State’s corporate powers, rights and privileges had
been “suspended.” NCI has made no showing that these terms are legally synonymous
in the corporate law context. In fact, California law has made a distinction between
forfeiture and suspension of corporate privileges for failure to pay franchise taxes. See
Graceland v. Peebler, 50 Cal. App. 2d 545, 547–48 (1942) (concluding that terms
“forfeited” and “suspended” are not interchangeable in context of 1917 tax statute
governing loss of corporate rights and privileges for failure to pay franchise taxes); see
also Cal. Rev. & Tax Code Ann. § 23301 (West 2004) (providing that corporate
powers, rights, and privileges of domestic taxpayer will be “suspended” for
nonpayment of certain taxes, penalties, and interest, but corporate powers, rights, and
privileges of foreign corporation will be “forfeited” for same nonpayment). 
          Moreover, NCI offered no legal argument or authority showing that subsection
171.255(a) applies when the circumstances involve a corporation that has had its
corporate privileges suspended in another state for nonpayment of taxes in that
jurisdiction. It is well-settled that section 171.255 must be strictly construed to protect
those individuals against whom liability is sought because it is penal in nature and
cannot be extended beyond the clear meaning of its language. Wilburn, 824 S.W.2d
at 760; McKinney v. Anderson, 734 S.W.2d 173, 174 (Tex. App.—Houston [1st Dist.]
1987, no writ); see Schwab v. Schlumberger Well Surveying Corp.,198 S.W.2d 79, 81
(Tex. 1946) (construing predecessor statute).
          Chapter 171 of the Tax Code, of which section 171.255 is a part, governs
franchise taxation in Texas. See Tex. Tax Code Ann. §§ 171.001–.894 (Vernon 2002
& Vernon Supp. 2004–2005). Franchise taxes governed by that chapter are taxes on
the privilege of transacting business within Texas. See Wilburn, 824 S.W.2d at 761. 
As Texas courts have recognized, section 171.255 is a revenue measure, the purpose
of which is to enforce collection of Texas franchise taxes. See Williams v. Adams, 74
S.W.3d 437, 440 (Tex. App.—Corpus Christi 2002, pet. denied); G. Richard Goins
Const. Co., Inc. v. S.B. McLaughlin Assocs., Inc., 930 S.W.2d 124, 128 (Tex.
App.—Tyler 1996, writ denied). 
          Although not expressly stated in Chapter 171, it is logical that subsection
171.255(a) applies only to corporations that have failed to file a report or to pay a tax
or penalty as required by Texas law. That is, it follows that subsection 171.255(a)
applies when a corporation has its corporate privileges forfeited in Texas, not in
California. Here, NCI has not shown that subsection 171.255(a) applies to Tri-State,
a California corporation, whose corporate rights and privileges were suspended by
California authorities for noncompliance with California tax laws. In addition, NCI has
not offered any evidence showing that Tri-State’s corporate privileges have been
forfeited by Texas authorities for non-compliance with Texas tax law. Thus, we
conclude that NCI did not meet its burden to show that Hollister and Bush are
personally liable pursuant to Texas Tax Code subsection 171.255(a) for NCI’s claims
against Tri-State.
          NCI also relies on California Revenue and Tax Code section 23301 as authority
to support officer liability in this case. See Cal. Rev. & Tax Code Ann. § 23301. 
Despite this reliance, section 23301 does not make a corporation’s officers liable for
debts incurred during suspension of corporate privileges, as alleged by NCI. See id. 
Rather, section 23301 provides only for suspension or forfeiture of “corporate powers,
rights and privileges” for non-payment of a required tax, penalty, or interest. See id. 
NCI did not show that Hollister and Bush can be held individually liable for Tri-State’s
debts under California Revenue and Tax Code section 23301.


 See Bank of America
Nat’l Trust & Sav. Assoc. v. Morse, 508 P.2d 194, 196 (Or. 1973) (holding that
California Revenue and Tax Code section 23301 does not authorize officer liability for
corporate debts when corporate powers are suspended).
          In sum, we conclude that NCI did not meet its burden to establish officer
liability. Any implied findings of fact or conclusions of law by the trial court that Bush
and Hollister can be held individually liable for NCI’s claims against Tri-State are not
supported by sufficient evidence or by the law. We hold that the trial court improperly
denied Hollister’s and Bush’s special appearances.
          We sustain Hollister’s and Bush’s sub-issue challenging the trial court’s denial
of their special appearances.
Conclusion
          We affirm the order of the trial court denying Tri-State’s special appearance and
we reverse the order of the trial court denying Hollister’s and Bush’s special
appearances and render judgment dismissing NCI’s claims against Hollister and Bush 

for lack of jurisdiction.




                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.