Francisco **LONGORIA** and Consuelo Longoria, Appellants,

v.

**ATLANTIC GULF ENTERPRISES, INC., et al., Appellees.**

No. 1314.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 21, 1978.

Rehearing Denied Oct. 12, 1978.

H. Clyde Farrell, Harlingen, for appellants.

Lee Arnett, Brownsville, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit arising out of a home improvement transaction in which the plain-

tiffs, Francisco and Consuelo Longoria, alleged violations of the Texas Deceptive Trade Practices-Consumer Protection Act, the Texas Retail Installment Sales Act, and the Federal Truth-In-Lending Act against defendants Atlantic Gulf Enterprises, Inc., three of Atlantic Gulf's officers and directors, Franklin T. Graham, Jr., Jack C. Frost, and Joseph Howard Graham and Brownsville Savings and Loan Association. After a jury verdict, the trial court awarded the Longorias statutory damages against Atlantic Gulf for violations of the Texas Retail Installment Sales Act and the Federal Truth-In-Lending Act. The court denied any recovery under the Texas Deceptive Trade Practices-Consumer Protection Act. Plaintiffs have perfected their appeal to this Court.

Atlantic Gulf Enterprises, Inc. (Atlantic Gulf) is a Texas corporation which was engaged in the business of selling aluminum siding, making or contracting to make home improvements and in arranging credit financing for such improvements. Plaintiffs' trial petition alleged that Chuck Williams, an employee and agent of Atlantic Gulf, contacted them in October, 1974 concerning improvements that the plaintiffs might wish to make on their home located in Harlingen, Texas. The plaintiffs alleged that Williams filled out a preliminary application and promised to return if he could arrange credit for them with the bank. Thereafter, Williams returned to the plaintiffs' home and allegedly informed them that Atlantic Gulf had arranged credit to finance the home improvements through Brownsville Savings and Loan Association. The plaintiffs further alleged that in exchange for Longorias' promise to pay certain monthly installments, Charles Williams as agent for Atlantic Gulf agreed to move plaintiffs' home to a different location and construct various enumerated improvements. Plaintiffs alleged they signed several documents including: 1) a "Proposal" whereby they agreed to pay the principal amount of $9,000 in monthly installments plus interest pursuant to an agreement with Atlantic Gulf; 2) an agreement with Williams whereby they were to pay Williams an additional principal amount of $1,900 in monthly installments plus interest for additional work to be performed under the agreement with them and Atlantic Gulf; 3) a credit application; 4) a disclosure statement; and 5) a notice of a right for recission.

The plaintiffs stated that Brownsville Savings approved the extension of credit to them before they entered into the contract with Atlantic Gulf, and that all of the terms of the contract were ultimately known to the defendants Brownsville Savings and Atlantic Gulf at the time they entered into the contract.

Plaintiffs further alleged that the work performed by Atlantic Gulf failed to conform to the contract in 27 enumerated respects and, as a result, that their home was dismantled and rendered uninhabitable. The plaintiffs alleged that Atlantic Gulf failed to honor certain warranties concerning the quality of work it agreed to perform which violated the Texas Deceptive Trade Practices-Consumer Protection Act. They sought to hold the named officers and directors of Atlantic Gulf individually liable on the basis that Atlantic Gulf's right to do business as a corporation and its charter had been forfeited for failure to satisfy the Texas Franchise Tax requirements.

Atlantic Gulf answered and specifically denied that Williams was an agent of Atlantic Gulf who had authority to execute contracts on behalf of Atlantic Gulf. The answer further alleged, in substance, that Charles Williams was acting for himself in negotiating the home improvements project with the plaintiffs and in implementing these improvements. Atlantic Gulf stated that its only connection with the plaintiffs' project was to furnish steel siding to Charles Williams for his use in the project and to assist Williams in arranging for the financing.

In response to special issues, the jury: 1) found that at the time the plaintiffs signed the "Proposal", Charles Williams was authorized by Atlantic Gulf to act for Atlantic Gulf in the signing of the proposal; 2)

failed to find that Atlantic Gulf caused "misunderstanding on the part of the plaintiffs as to the connection of Charles Williams to Atlantic Gulf by causing the plaintiffs reasonably to believe that Williams was acting for Atlantic Gulf;" 3) found that Charles Williams incorrectly represented to the plaintiffs that goods or services to be sold to them were of a particular quality when they were of inferior quality; 4) found that the plaintiffs were adversely affected by the incorrect misrepresentations referred to in the previous special issue; 5) found that the unworkmanlike defects in the construction on the plaintiffs' home could not be repaired without undue expense; 6) failed to find that Graham consented to and approved the contract after learning of the contract; and 7) found reasonable attorney's fees.

Thereafter, judgment was entered awarding the Longorias statutory damages against Atlantic Gulf for violations of the Federal Truth-In-Lending Act and the Texas Retail Installment Sales Act plus reasonable attorney's fees. The trial court denied any recovery, however, under the Texas Consumer Protection Act, and refused to hold Graham personally liable. In eight points of error on appeal, the plaintiffs complain of these latter two holdings, and of the amount of damages awarded them for the violation of the Federal Truth-In-Lending Act.

We first consider appellants' complaint concerning the amount of damages the trial court awarded under their Federal Truth-In-Lending Act claim. (See 15 U.S.C.A. § 1601 et seq.; 12 C.F.R. 226.1 et seq.). In point of error seven, the plaintiffs complain that the district court erred by failing to award them $2,000 instead of $1,000 under the Federal Truth-In-Lending Act. None of the parties challenge the trial court's determination that violations of the Federal Truth-In-Lending Act occurred. The sole question before us is whether or not the trial court properly entered judgment awarding the Longorias $1,000 damages for these violations.

■ Once a violation of the Truth-In-Lending Act or Regulation Z is established, 15 U.S.C.A. § 1640(a) provides a civil remedy. That section states:

"Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter . . . with respect to any person is liable to such person in an amount equal to the sum of— . . . (2)(A)(i) in the case of an individual action *twice the amount of any finance charge* in connection with the transaction, . . . except that liability under this subparagraph shall not be less than $100 *nor greater than $1,000*; . . ." (Emphasis supplied).

In this case, the "finance charge in connection with the transaction" was greater than $1,000. Under these sections quoted above, the defendants were therefore liable for the statutory maximum because twice the amount of the finance charge is greater than $1,000.

The plaintiffs, Francisco Longoria and his wife, Consuelo Longoria, each signed all of the loan documents in question. The plaintiffs, relying on *Davis v. United Companies Mortgage and Investment of Gretna, Inc.,* 551 F.2d 971 (5th Cir. 1977), argue that because their obligation is joint and several, each of them should be awarded the statutory penalty as if each of them had signed the contract alone.

Here, the plaintiffs filed suit against both Brownsville Savings and Atlantic Gulf seeking recovery of statutory damages in the sum of $1,000 from each defendant for alleged violations of the Truth-In-Lending Act. Atlantic Gulf and the individual defendants filed a cross action against Brownsville Savings seeking indemnity in the event damages were awarded on the plaintiff's Federal Truth-In-Lending Act and Texas Retail Installment Sales Act claims. Prior to trial, the plaintiffs settled their claim with Brownsville Savings. Thereafter, the plaintiffs did not amend their pleadings to request $2,000 from Atlantic Gulf.

After the jury's answers to special issues had been received and entered, the trial court entered judgment awarding the plaintiffs $1,000 against Atlantic Gulf for violations of the Truth-In-Lending Act. This award is the amount the plaintiffs prayed for in their trial petition. The plaintiffs filed a motion for judgment non obstante veredicto requesting the Court to enter judgment awarding them, among other things, $1,000 for violations of the Federal Truth-In-Lending Act. The plaintiffs filed a motion for new trial which complained for the first time that the trial court erred in awarding them only $1,000 rather than $2,000 under the Truth-In-Lending Act.

■ The judgment of the trial court must conform to the pleadings, the evidence and the verdict, if any. Rule 301, Texas Rules of Civil Procedure. *Starr v. Ferguson,* 166 S.W.2d 130 (Tex.Sup.1942). A judgment for damages in excess of the amount pleaded is erroneous even though a larger amount might be warranted by the evidence. *Kleiner v. Eubank,* 358 S.W.2d 902 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.); *Grace v. Starrett,* 411 S.W.2d 774 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). Here the trial court entered judgment in favor of the Longorias in accordance with the amount requested in their original petition. Appellants' point of error seven is overruled. Rule 434, T.R.C.P.

■ In points of error five and six, the Longorias complain that the trial court erred in refusing to award treble damages, reasonable attorney's fees and court costs under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code, § 17.41, et seq. (Supp.1978).[1] Section 17.50(a) provides, in relevant part, as follows:

"A consumer may maintain an action if he has been adversely affected by any of the following:

.       .       .       .       .

(2) a failure by any person to comply with an expressed or implied warranty;"

A consumer who prevails in a suit filed under Section 17.50 may obtain, in addition to other specified relief, three times the amount of actual damages plus court costs and reasonable attorney's fees. Texas Business & Commerce Code, § 17.50(b)(1) (Supp.1978). The award of treble damages under this subsection is mandatory in the event the consumer proves all of the elements required to recover actual monetary damages. *Woods v. Littleton,* 554 S.W.2d 662, 669 (Tex.Sup.1977).

Exhibit 10-A is a form entitled "Proposal" printed on Atlantic Gulf letterhead, which was signed by the plaintiffs and Williams and introduced into evidence. The "Proposal" provided in part as follows:

"(1) Contractor to move house & remodel according to plans agreed by customer.

(2) Plans submitted to be constructed according to local & state codes & regulations.

(3) Customer to receive (30) thirty year written guarantee on steel siding."

Printed in the lower left-hand corner of the "Proposal" form was the following "warranty:" "All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. . . ." The parties stipulated that: 1) the improvements to the Longoria home were not constructed in a workmanlike manner according to standard practices; 2) the reasonable cash market value of the Longorias' house and land, if the house had been remodeled in a workmanlike manner, would be $10,000; and 3) the reasonable cash market value of the Longorias' house and land in its present condition is $2,070.

Appellants' general arguments in support of these points of error assume that appellants proved through the above stipulations,

---

1. The Consumer Protection Act, originally enacted on May 21, 1973, was amended effective September 1, 1975, and effective May 23, 1977. Plaintiffs' petition was filed and the alleged deceptive trade practices occurred prior to the effective date of the 1975 amendment. The references herein to the Consumer Protection Act pertain to the statute as enacted in 1973 unless otherwise indicated.

the undisputed evidence, and jury findings all of the necessary elements required to recover the mandatory treble damages, reasonable attorney's fees and court costs because Atlantic Gulf violated Section 17.50(a) by failing to comply with the express warranty contained in the "Proposal." The record in this case raises several unresolved issues concerning the scope of Williams' authority to act on behalf of Atlantic Gulf. The jury found that Williams was authorized to sign the "Proposal on behalf of Atlantic Gulf." No other jury issues were requested or submitted concerning Williams' authority to act thereafter on behalf of Atlantic Gulf. Williams was not a named defendant, and the evidence concerning the scope of his authority to act on behalf of Atlantic Gulf is conflicting.

■ It is a general rule that an agent's authority is presumed to be coextensive with the business entrusted to his care. He is limited in his authority to such contracts and acts as are incident to the management of the particular business with which he is entrusted. *Boyd v. Leasing Associates, Inc.,* 516 S.W.2d 485, 491 (Tex.Civ.App.— Houston [1st Dist.] 1974, writ ref'd n. r. e.); *Jarbe Oil Co. v. Birdwell & Son Drilling Co.,* 335 S.W.2d 394 (Tex.Civ.App.—Eastland 1960, writ ref'd n. r. e.). On the other hand, a principal will not be charged with liability to a third person for the acts of the agent whenever the agent's acts are in excess of his authority, except where such acts are subsequently ratified by the principal or when the principal is estopped to deny his liability therefor. *Texas Midland R. R. v. Monroe,* 216 S.W. 388 (Tex.Sup.1919); *Traylor v. Gray,* 547 S.W.2d 644 (Tex.Civ.App.— Corpus Christi 1977, writ ref'd n. r. e.); *Fritz v. Skiles,* 107 S.W.2d 768 (Tex.Civ. App.—Eastland 1937, no writ); 2 Tex. Jur.2d § 173 (Agency) (1959).

■ Apparent authority is based on the doctrine of estoppel. One seeking to charge a principal through apparent authority of an agent must prove such conduct on the part of the principal as would lead a reasonably prudent person to suppose that the agent has the authority he purports to exercise. *Rourke v. Garza,* 530 S.W.2d 794, 802 (Tex.Sup.1976); *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–79 (Tex.Sup.1974); *Chastain v. Cooper & Reed,* 257 S.W.2d 422 (Tex.Sup.1953). A person who deals with an agent generally has the burden of proving the authority of such agent. *Buchoz v. Klein,* 184 S.W.2d 271 (Tex.Sup.1944); *Hanson Southwest Corp. v. Dal-Mac Const. Co.,* 554 S.W.2d 712, 719 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.).

■ The record before us shows that Williams was a self-employed independent salesman who sold "remodeling of residences" through various companies, including Atlantic Gulf. These companies arranged for credit, provided some of the remodeling materials and then sometimes completed the project or arranged to have the project completed through subcontractors.

In pre-trial discovery, Atlantic Gulf made conflicting admissions concerning the authority of Williams to act on behalf of Atlantic Gulf in signing the original instrument entitled "Proposal." The jury found Williams was authorized to sign the "Proposal." During pre-trial discovery, Atlantic Gulf first admitted, in effect, that it was obligated under the "Proposal" to provide materials and services to the extent reflected in the terms of that document. It later amended its answer to state that it had agreed only to supply steel to Williams for his work on the project. Atlantic Gulf's position at trial was that Williams was not authorized to act in its behalf in performing the actual remodeling work to the plaintiffs' home. The record is devoid of any evidence that Atlantic Gulf approved or participated in any way in the remodeling work on the plaintiffs' home. The undisputed evidence is that Williams assumed the responsibility for commencing and completing the remodeling job without the prior knowledge or approval of Atlantic Gulf.

Williams testified that he originally did not intend to take charge of the actual construction matters on the plaintiffs' transaction. Apparently, the plaintiffs received word directly from Brownsville Sav-

ings, and not Atlantic Gulf, that their loan had been approved. Thereafter, the plaintiffs contacted Atlantic Gulf to inquire when the remodeling work would commence. After receiving no satisfaction from Atlantic Gulf, the plaintiffs contacted Williams. Williams testified that, after he was contacted by the plaintiffs, he decided that he "might as well get somebody out there and do the job." Thereafter, Williams personally obtained a building permit which was in the name of Atlantic Gulf although Williams testified he did not seek prior approval from Atlantic Gulf. The record indicates that Williams personally supervised and hired the contractors who started to remodel the plaintiffs' home.

The contract ("Proposal") upon which the plaintiffs seek to hold Atlantic Gulf liable does not embody all of the essential terms of the alleged remodeling contract pled by the plaintiffs. The "Proposal" provided only that the contractor was to move the house and remodel according to plans agreed to by the customer and the plans to be submitted were to be constructed according to local and state building codes. The undisputed evidence showed that neither Williams nor Atlantic Gulf arranged for or supervised the moving of the plaintiffs' home. The plaintiffs, themselves, hired someone to do this work for them. Williams only advanced to the plaintiffs money to cover the moving costs. Although detailed plans and specifications were never reduced to writing, Williams did draw some rough sketches reflecting the remodeling work that was to be done. The record indicates that after the construction work started, the plaintiffs periodically changed their minds concerning the work they wished to have done and so instructed the contractors without first notifying Williams.

The plaintiffs failed to request proper special issues concerning Williams' authority to act on behalf of Atlantic Gulf in constructing the improvements to plaintiffs'

house. Williams' authority as an agent was not established by conclusive evidence. The jury's finding that Williams was authorized to sign the "Proposal" on behalf of Atlantic Gulf alone is not sufficient to hold Atlantic Gulf liable for all of the actual construction of the improvements that Williams made or caused to be made which were beyond the scope of his actual authority. Appellants' points of error five and six are overruled.

In points of error one through four, the plaintiffs complain of the trial court's failure to enter judgment imposing personal liability on Graham. Their main complaints concern the applicability of Tex. Tax.-Gen.Ann. art. 12.14 (1969),[2] which provides for the forfeiture of a corporation's right to do business for its failure to pay franchise taxes. This article further provides that such forfeiture has the following consequence, among others:

> ". . . Each director and officer of any corporation whose right to do business within this State shall be so forfeited shall, as to any and all *debts* of such corporation, which shall include all franchise taxes and penalties thereon *which shall become due and payable subsequent to the date of such forfeiture, and which may be created or incurred, with his knowledge, approval and consent,* within this State, *after such forfeiture* by any such directors or officers, *and before the revival of the right of such corporation to do business,* be deemed and held liable thereon in the same manner and to the same extent as if such directors and officers of such corporation were partners." (Emphasis added).

Under the terms of this statute, the personal liability of officers and directors for debts incurred after the corporation no longer has the right to do business is limited to those debts of which they have knowledge and which they have consented to and approved in the regular course of the business of the corporation. *First National Bank of Boston v. Silberstein,* 398 S.W.2d 914, 916 (Tex.Sup.1966).

---

2. Article 12.14 was amended after the trial of this case. See Tex.Tax.-Gen.Ann. art. 12.14 (Supp.1978).

Plaintiffs seek to hold appellee Graham personally liable for their claims against Atlantic Gulf on the basis of this statute. It was for this reason that the plaintiffs submitted special issue number six (above quoted) which inquired whether Graham consented to and approved the contract after learning of the contract. The jury returned a negative answer to this special issue. Points of error one and two challenge the jury's negative finding on legal and factual sufficiency grounds.

Graham testified, in effect, that he had no knowledge of the plaintiffs' transaction until he was in the office of plaintiffs' attorney. He could not recall whether this meeting was prior to or subsequent to the date the plaintiffs had filed their suit. Graham further testified that he did not talk with Williams concerning the plaintiffs' transaction until after the suit was filed. Graham did not remember that he ever talked with Brownsville Savings regarding the plaintiffs' loan as he had in the past in other loan transactions.

We have examined the record and find that this evidence does not conclusively establish the opposite of the jury's answer to special issue six above. There is probative evidence to support the answer and such answer is not so against the great weight and preponderance of the evidence as to be clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 244 S.W.2d 660 (Tex.Sup.1951).

There is another reason why plaintiffs' points of error one and two must be overruled. We have already determined that the trial court properly denied recovery against Atlantic Gulf under the Texas Deceptive Trade Practices-Consumer Protection Act. Accordingly, regardless of the jury's answer to this special issue, there would be no basis upon which to impose personal liability against Graham on this same claim.

In point of error four, the plaintiffs contend that the trial court erred in refusing to hold Graham personally liable because Graham "was the sole proprietor of the non-corporate business known as Atlantic Gulf Enterprises, Inc. at the time the causes of action asserted by Appellants arose." In support of this point of error, the plaintiffs argue that at the time the "Proposal" was signed, Atlantic Gulf's corporate charter had been forfeited pursuant to Tex.Tax.-Gen.Ann. art. 12.17 (1969), and that Graham, who at that time acted as president of Atlantic Gulf, also owned 100% of its stock. Plaintiffs argue that upon such forfeiture, the corporate existence ends and title to the corporate assets vested in the sole shareholder (Graham) and he became personally liable as a sole proprietor for all corporate obligations. We do not agree.

The cases upon which the plaintiffs rely were decided prior to the 1965 amendment to article 12.17 which, for the first time, provided a procedure whereby a corporation whose charter had been forfeited could make application for its reinstatement. Atlantic Gulf did just this. Atlantic Gulf's corporate charter was reinstated in 1976 pursuant to the provisions of article 12.17. Appellant cannot hold Graham personally liable on the theory that the corporation dissolved when its charter was forfeited. Cf. *McGown v. Kittel*, 480 S.W.2d 47, 50 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n. r. e.). Article 12.17 provides, in substance, that the reinstatement provisions will not affect the liability of the officers and directors of the corporation for debts, obligations or liabilities incurred between the date of the forfeiture of the right to do business and the date of the reinstatement. This article does not expand the personal liability requirements contained in article 12.14, previously mentioned. Plaintiffs' point of error four is overruled.

In point of error eight, the appellants contend that the district court erred in denying their motion to equalize peremptory strikes. The plaintiffs argue that the trial court erred in failing to grant them a total of 12 peremptory challenges to the veniremen on the jury panel. In support of this point of error, they argue that Brownsville Savings and Atlantic Gulf and the individu-

al defendants were not adversary parties on any fact issue that would be submitted to the jury.

After the Longorias dismissed their claim against Brownsville Savings, Atlantic Gulf's and the individual defendants' cross action against Brownsville Savings for indemnity remained before the court. Before the trial commenced, the plaintiffs submitted an oral motion requesting the trial court to give them an additional six peremptory strikes because the trial court had granted six strikes to be allocated among Atlantic Gulf and the three individual defendants and six strikes to Brownsville Savings. This motion was denied by the trial court.

Rule 233, Texas Rules of Civil Procedure, provides that each party to a civil suit tried in a district court shall be entitled to six peremptory challenges. The term "each party," as used in the Rule, does not mean the same thing as the word "person," but means each litigant or group of litigants whose interest is antagonistic to another litigant or group of litigants. *Retail Credit Co. v. Hyman*, 316 S.W.2d 769 (Tex. Civ.App.—Houston 1958, writ ref'd). In addition to Rule 233, Article 2151a, Tex.Rev. Civ.Stat.Ann. (Supp.1978) provides in part as follows:

> "After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party."

The harmless error rule applies where a party is denied the number of peremptory challenges to which he is entitled. *Tamburello v. Welch*, 392 S.W.2d 114, 117 (Tex.Sup.1965). Rules 434, 503, Texas Rules of Civil Procedure. The burden is on the plaintiffs to show that the allowance of a total of twelve peremptory challenges to the defendants and the allowance of only six such challenges to them resulted in a trial that was materially unfair to them. The plaintiffs have failed to show that they used all of their peremptory challenges, or that they were forced to accept undesirable veniremen on the jury panel. There is nothing in the record to indicate that any of the 12 jurors who made up the jury were disqualified; that any of them were prejudiced against the plaintiffs; or that any of the jurors were unfair in reaching the verdict that was returned. We, therefore, hold that the plaintiffs failed to show that the trial court's error, if any, caused or probably caused the rendition of an improper judgment. *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.Sup.1974); *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.Sup.1965); *Texas Employers' Insurance Association v. McCaslin*, 317 S.W.2d 916 (Tex.Sup.1958); *King v. Maldonado*, 552 S.W.2d 940 (Tex.Civ.App.— Corpus Christi 1977, writ ref'd n. r. e.). Plaintiffs' point of error number eight is overruled.

The judgment of the trial court is AF-FIRMED.