Jonnett dissent 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-101-CV





ELMER J. JONNET AND JOSEPH E. JONNET,



 
 APPELLANTS


vs.





STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 91-15454, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 



DISSENTING OPINION


 




 Believing that the majority has extended officer and director liability under section
171.255 of the Tax Code far beyond what the legislature intended, I respectfully dissent.

 Brent Ranch Operating, Inc. ("BRO") was incorporated on November 1, 1985, with
R.P. Brent as its sole director. On December 1, 1985, BRO became the operator of record of
certain oil wells in Carson County. At that time, the wells in question apparently had already
become dry or inactive, never again producing after October 1985. Pursuant to Statewide Rule
14 promulgated by the Railroad Commission ("Commission"), the operator of the wells was
required to commence plugging operations within a period of ninety days after drilling or
operations ceased (the deadline is now one year). See 16 Tex. Admin. Code § 3.14 (1993). BRO
did not plug the wells. Sometime thereafter, perhaps as late as March 1989, Elmer and Joseph Jonnet became directors and officers of BRO. BRO subsequently failed to report and pay
franchise taxes due March 15, 1990. Its right to do business and charter were later forfeited. As
far as the record reveals, BRO had no remaining assets on March 15, 1990, and conducted no
business whatsoever after that date. Nor does the record reflect that the Jonnets dealt improperly
with any assets the corporation may have had before it ceased doing business.

 Based on BRO's failure to plug the wells, in 1990 the Commission initiated an
administrative proceeding to assess a penalty against BRO. See Tex. Nat. Res. Code Ann.
§§ 81.0531-.054, 85.381 (West 1993). That proceeding culminated in a final order of the
Commission dated December 3, 1990, assessing BRO an administrative penalty of $28,000. The
Jonnets were not parties to that proceeding. The present suit was brought pursuant to Tex. Tax
Code Ann. § 171.255 (West 1992) (hereinafter "Tax Code"), to collect the penalty from the
Jonnets individually. After a bench trial at which only documentary evidence was produced, the
trial court rendered judgment against the Jonnets for $48,000 in civil and administrative penalties,
plus attorney's fees and court costs. The majority affirms.

 Section 171.255 of the Tax Code provides:


 (a) If the corporate privileges of a corporation are forfeited for the failure to
file a report or pay a tax or penalty, each director or officer of the corporation is
liable for each debt of the corporation that is created or incurred in this state after
the date on which the report, tax, or penalty is due and before the corporate
privileges are revived. The liability includes liability for any tax or penalty
imposed by this chapter on the corporation that becomes due and payable after the
date of forfeiture.


 (b) The liability of a director or officer is in the same manner and to the same
extent as if the director or officer were a partner and the corporation were a
partnership.


 (c) A director or officer is not liable for a debt of the corporation if the
director or officer shows that the debt was created or incurred:


 (1) over the director's objection; or


 (2) without the director's knowledge and that the exercise of reasonable
diligence to become acquainted with the affairs of the corporation would not have
revealed the intention to create the debt.


 (d) If a corporation's charter or certificate of authority and its corporate
privileges are forfeited and revived under this chapter, the liability under this
section of a director or officer of the corporation is not affected by the revival of
the charter or certificate and the corporate privileges.


Tax Code § 171.255. Considering the statute as a whole, its nature and object, and the
consequences that would follow from an imposition of liability on persons in the Jonnets' position,
I believe the result reached by the majority is contrary to the intent of the legislature.

 "In determining the meaning of a statute, a court must consider the entire act, its
nature and object, and the consequences that would follow from each construction." Sharp v.
House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991). "The cardinal rule in statutory
interpretation and construction is to seek out the legislative intent from a general view of the
enactment as a whole, and, once the intent has been ascertained, to construe the statute so as to
give effect to the purpose of the Legislature." Citizens Bank v. First State Bank, Hearne, 580
S.W.2d 344, 348 (Tex. 1979). In determining legislative intent, it is essential that we look to the
statute as a whole and not solely to isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208
(Tex. 1985).

 The key question for determining personal liability under section 171.255(a) is
when the corporate debt in question was "created or incurred." The critical clause of subsection
(a) is stated in the passive voice rather than the active voice: "each director or officer . . . is
liable for each debt . . . that is created or incurred" (had it been written in the active voice, the
statute would have read, "each debt . . . that the corporation creates or incurs"). If we look at
subsection (a) in isolation, therefore, it is possible to conclude that a corporate debt could be
created or incurred by a third party, without the involvement of the corporation itself, such as by
the Commission's assessing a penalty or a court's rendering a judgment against the corporation. 
Looking at the statute as a whole, however, it becomes obvious that such an interpretation is
incorrect. For example, subsection (c)(2) relieves directors and officers from liability for debts
created or incurred "without the director's knowledge and [for which] the exercise of reasonable
diligence to become acquainted with the affairs of the corporation would not have revealed the
intention to create the debt." Tax Code § 171.255(c)(2). Thus, the statute contemplates that
directors and officers should be personally liable only for debts (1) they knew were being created
or incurred, or (2) where the exercise of reasonable diligence to become acquainted with the
affairs of the corporation would have revealed the intention to create the debt. Viewing the
enactment from this perspective reveals that the legislature envisioned personal liability only for
debts created or incurred through some sort of "affairs of the corporation" about which the
director or officer in question had some knowledge and control. In referring to "the intention to
create the debt," the legislature can only have been speaking of the corporation's intention. Thus,
an interpretation allowing personal liability to be imposed for a debt "created" by a third party
such as the Commission, without any involvement or transaction of business by the corporation,
is contrary to the clear intent of the legislature.

 Similarly, subsection (c)(1) relieves directors and officers from personal liability
for debts created or incurred "over the director's objection." Tax Code § 171.255(c)(1). Such
a provision would make no sense if subsection (a) were interpreted to impose personal liability
on directors and officers for corporate debts "created" by a third party without any transaction of
business by the corporation; in the case of an administrative penalty or court judgment, for
example, a director or officer could escape personal liability simply by "objecting" to the
imposition of the penalty or judgment against the corporation. Again, therefore, this provision
demonstrates that the legislature contemplated personal liability of directors and officers under
section 171.255 only for corporate debts created or incurred through some transaction of business
by the corporation, regarding which the officer or director in question had some degree of
knowledge and control.

 Before reviewing what the courts have said about the provision, a word about the
evolution of the statutory language is in order. Before 1977 the statute required affirmative proof
that a corporate debt was created with the "knowledge, approval and consent" of the officer or
director sought to be held liable. See Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, art. VII,
§ 9, 1961 Tex. Gen. Laws 71, 110-11; Act of May 24, 1969, 61st Leg., R.S., ch. 801, § 11,
1969 Tex. Gen. Laws 2366, 2372 (Tex. Tax.-Gen. Ann. art. 12.14, since repealed and codified
at Tax Code § 171.255). In 1977 the statute was amended to delete the requirement for
affirmative proof of knowledge, approval, and consent, but the following sentence was added: 
"However, any officer or director may avoid liability if he shows that the debt was created (1)
over his objection, or (2) without his knowledge, if the exercise of reasonable diligence to
acquaint himself with the affairs of the corporation would not have revealed the intention to create
the debt." Act of May 25, 1977, 65th Leg., R.S., ch. 671, § 1, 1977 Tex. Gen. Laws 1692,
1692-93. 

 The purpose of this amendment was not to expand the actual scope of officer and
director liability by completely removing the elements of knowledge and consent. Rather, the
legislative history behind the 1977 amendment shows that the intent of the legislature was simply
to shift the burden of proof to the officers and directors regarding their knowledge of and consent
to the corporation's creation of the debt:


The current law . . . provides that the officers and directors of a corporation that
has forfeited its right to do business become personally liable for debts incurred
with their knowledge after such forfeiture. The bill shifts the burden of proof to
the directors and officers who must show that they could not have reasonably
known of such a debt before they can escape liability.


House Study Group, Bill Analysis, Tex. H.B. 1860, 65th Leg., R.S. (1977). "The purpose of
this bill is . . . to place the burden of proof on the directors and officers of such a corporation
with respect to their liability for all debts incurred by the corporation on or after forfeiture." 
House Ways and Means Comm., Bill Analysis, Tex. H.B. 1860, 65th Leg., R.S. (1977).

 Keeping in mind that the purpose of the 1977 amendment was simply to shift the
burden of proof regarding knowledge and consent to the officers and directors, not to expand the
overall scope of officer and director liability, early court interpretations of the statute become
extremely helpful. For example, the following passage from First National Bank v. Silberstein,
398 S.W.2d 914 (Tex. 1966), although somewhat lengthy, reveals the court's view of the intended
scope of the statute:


[Article 12.14] does not purport to require actual knowledge on the part of the
officers and directors of the franchise tax delinquencies of the corporation and the
forfeiture of its right to do business as a condition to personal liability for
subsequently incurred corporate debts. The statute takes for granted that officers
and directors will know these facts or, in any event, does not make such
knowledge a condition to liability. It is further clear under the statute that after a
corporation no longer has the right to do business the personal liability of officers
and directors for subsequently incurred corporate debts is limited to those debts of
which they have knowledge and, with the opportunity afforded thereby, which they
have consented to and approved. This does not mean that officers and directors
are personally liable only for debts of the corporation which they personally create,
or which are created in their presence, or of which they have contemporaneous
knowledge. There is no implication in the wording of the statute that these
circumstances are conditions to liability or that knowledge must co-exist in exact
time with the purchase transaction giving rise to the debt. To the contrary, the
reasonable construction of the statute to the facts at hand is that personal liability
is determined by the acts of Respondents in consenting to and approving the debts
of the corporation where knowledge of their creation is shown to have come to
them in the regular course of the business of the corporation. This . . . is liability
which results from and is attributable to the acts of Respondents. They had only
to disapprove and disavow the debts to avoid personal liability; but having
consented to and approved the debts, they became personally liable therefor.


398 S.W.2d at 915-16 (emphasis added). Citing Silberstein, the court in Longoria v. Atlantic Gulf
Enterprises, Inc., 572 S.W.2d 71 (Tex. Civ. App.Corpus Christi 1978, writ ref'd n.r.e.),
concluded,


Under the terms of [article 12.14], the personal liability of officers and directors
for debts incurred after the corporation no longer has the right to do business is
limited to those debts of which they have knowledge and which they have
consented to and approved in the regular course of the business of the corporation.


572 S.W.2d at 78.

 Although the burden is now on the officers and directors to prove their disapproval
of or reasonable lack of knowledge of post-forfeiture debts, (1) Silberstein and Longoria demonstrate
that the statute was meant to impose personal liability on officers and directors only for debts
arising from a post-forfeiture transaction of business by the corporation. Only by limiting
personal liability to debts created through an actual transaction of business could officers and
directors have a fair and reasonable opportunity to protect themselves against such personal
liability by disapproving and disavowing such debts.

 Moreover, construing section 171.255 to permit imposition of personal liability
only for debts created or incurred through the transaction of corporate business (as opposed to
debts "created" solely by the action of a court or administrative agency) is consistent with the
purposes of the act. Section 171.255 has two purposes: First, the statute is meant to discourage
the transaction of business by a corporation whose right to do business has been forfeited for
failing to timely report and pay franchise taxes; the imposition of personal liability on corporate
officers and directors is a reasonable means of accomplishing this purpose, because they are the
corporate agents responsible for controlling the nature and extent of the business the corporation
transacts. See Schwab v. Schlumberger Well Surveying Corp., 198 S.W.2d 79, 81 (Tex. 1946)
("The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was
for the protection of the public and particularly those dealing with the corporation."). Second,
the statute is meant to encourage the timely reporting and payment of franchise taxes; again, the
imposition of personal liability on corporate officers and directors is a reasonable means of
accomplishing this purpose, because they are the corporate agents responsible for seeing that such
reports are made and taxes paid. See Ross Amigos Oil Co. v. State, 138 S.W.2d 798, 800 (Tex.
1940) ("The penalties imposed for failure to pay the franchise tax are heavy, and were evidently
provided to hasten payment and to inflict a punishment on such corporations for failure to pay
such tax.").

 With these purposes in mind, interpreting section 171.255 to permit imposition of
personal liability on directors and officers for debts imposed by third parties without any post-forfeiture transaction of business by the corporation arguably creates another inconsistency. Such
an interpretation would, as in the present case, allow such liability to be imposed on corporations
whose failure to report and pay franchise taxes was the result of being insolvent and wholly
defunct. The directors and officers of a defunct corporation may, of course, avoid all possibility
of personal liability under section 171.255 by formally dissolving the corporation, thereby
eliminating any future need to report and pay franchise taxes. See Tex. Bus. Corp. Act Ann.
arts. 6.01-.07 (West 1980 & Supp. 1994). Thus, in the case of a defunct, inactive corporation,
the only purpose that could be served by imposing personal liability for post-forfeiture penalties
and judgments would be to encourage directors and officers of such corporations to file formal
dissolution documents. While it might be well and good for defunct corporations to file such
dissolution documents, the very statutes that provide for their filing impose no penalty for a failure
to do so. See Holliday v. Henry I. Siegel Co., 643 S.W.2d 519, 520-21 (Tex. App.Houston
[14th Dist.] 1982), aff'd, 663 S.W.2d 824 (Tex. 1984); Angus v. Air Coils, Inc., 567 S.W.2d
931, 933-34 (Tex. Civ. App.Dallas 1978, no writ). It would be anomalous, to say the least, for
an unrelated statute to provide a penalty for failure to take an action when the very statute
requiring the action provides none. Thus, the conclusion is inescapable that when the legislature
decided to impose personal liability on directors and officers for corporate debts created or
incurred after a failure to report or pay franchise taxes, it did not have in mind post-forfeiture
judgments or penalties against defunct corporations that had not transacted any post-forfeiture
business whatsoever. This lends additional weight to the conclusion that, for purposes of section
171.255, a corporate debt is "created or incurred" by some manner of transaction of business by
the corporation, not by the imposition of a debt by a third party without any involvement of the
corporation itself.

 Justice Kidd's majority opinion relies heavily on the notion that BRO's failure to
plug the wells was a "continuing violation" of the Commission's Rule 14. This fact is not
material, however, because under section 171.255 a debt is not "created or incurred" when the
violation of a duty occurs (as long as the violation arises from a failure to act), but on the
occurrence of the event that triggers the obligation or duty in the first place. For example, in
Wilburn v. State, 824 S.W.2d 755 (Tex. App.Austin 1992, no writ), this Court held that the
payment of wages was the event that triggered the duty to pay employment taxes; accordingly,
we held that the tax debt was "created or incurred" when wages were paid to employees,
notwithstanding that the corporation was only required to remit the taxes quarterly:


[W]e decline to hold that the debt is incurred when contributions are due [to the
Employment Commission] because to do so would hold officers and directors
personally liable for a corporate debt that is based, at least in part, on wages paid
before the date the franchise taxes were due. For example, while the first quarter
contributions are due April 1, they are based on wages paid between January 1 and
March 30. If the debt were incurred when "due," Wilburn would be held
personally liable for contributions that are based, in part, on wages paid before
March 15, 1986. We believe the State's construction would extend officer and
director liability beyond that contemplated by the legislature when it enacted
§ 171.255.


824 S.W.2d at 765. Thus, we held that the post-forfeiture violation of the contribution statute was
immaterial, because the only material date was when the event or events occurred that gave rise
to the duty to pay the taxes. In the present case, therefore, it is not material that BRO's failure
to plug the wells could be considered to be a "continuing violation," because the violation date
does not determine when the debt was created or incurred under section 171.255.

 Finally, the majority's interpretation of the statute is contrary to existing caselaw. 
Earlier cases that have addressed the liability of an officer or director under section 171.255 or
its predecessors have uniformly held that, for purposes of that statute, a corporate debt is "created
or incurred" on the occurrence of the event that initially triggers the existence of the corporation's
duty or obligation:

 (1) In Schwab v. Schlumberger Well Surveying Corp., 198 S.W.2d 79 (Tex. 1946),
the corporation renewed an existing corporate debt (a promissory note) after forfeiture of the
corporation's right to do business. Nonetheless, the court held that the defendant, a corporate
officer, was not liable: "It thus seems obvious that the liability imposed under the statute is only
for debts contracted after the forfeiture of the right to do business, and has no application to the
renewal of obligations arising prior thereto." Id. at 81. It is noteworthy that, although the statute
being examined in Schwab contained the same "created or incurred" language as the present
statute, the supreme court said that before personal liability could be imposed under the statute,
a debt had to be "contracted" after forfeiture. This is consistent with the interpretation that section
171.255 contemplates personal liability only for debts created or incurred through a post-forfeiture
transaction of business by the corporation, not for a post-forfeiture penalty or judgment that arose
from a pre-forfeiture event.

 (2) In Curry Auto Leasing, Inc. v. Byrd, 683 S.W.2d 109 (Tex. App.Dallas 1984,
no writ), the corporation had entered into a motor vehicle lease agreement, promising to pay $500
per month for 48 months. After about two years, the corporation stopped making lease payments,
and the leasing company terminated the lease and repossessed the car on September 10, 1982; the
corporation also failed to pay its franchise taxes, and its right to do business was forfeited on
September 15. The leasing company sold the car at a loss; in addition, the company imposed late-payment fees and storage fees on the corporation. The appellate court held that the statute did not
impose liability on the officers and directors "if the obligations, circumstances, conduct, or
transactions that create or incur the debt in question pre-existed the forfeiture." Id. at 112. The
court went on to hold that the debt "related back" to the execution of the lease:


 When parties enter into a contract the law presumes they intend the
consequences of its performance. It follows that performance or implementation
of the contractual provisions relate back to and are authorized at the time of
execution of the contract. . . . [T]he debt plaintiff sought to recover from defendant
corporate officers was authorized by the rental agreement and, therefore, was
brought into existence, caused by, resulted from, or arose out of the performance
or implementation of the provisions of the rental contract at the time Curry Auto
opted to terminate the contract on or before September 10, 1982. The items in
question, as debts of the corporation, relate back to [the corporation's] promise to
pay made in the rental contract executed December 1, 1980. No debt for which
the corporate officers are liable is shown to have been "created or incurred" after
the forfeiture.


Id. (citations omitted).

 (3) In River Oaks Shopping Center v. Pagan, 712 S.W.2d 190 (Tex. App.Houston
[14th Dist.] 1986, writ ref'd n.r.e.), the corporation entered into a lease for real property in 1978. 
In 1979 the corporation forfeited its right to do business. It subsequently defaulted on making the
payments on the lease. Relying on Schwab and Curry Auto Leasing, the court had no trouble
affirming a summary judgment in favor of the individual officers and directors.

 (4) In McKinney v. Anderson, 734 S.W.2d 173 (Tex. App.Houston [1st Dist.]
1987, no writ), the corporation entered into an equipment lease in 1982 and defaulted on the lease
in early 1983. The corporation had been formed in late 1981 and had made an "advance payment"
on its franchise taxes. In a suit against a corporate officer, the trial court granted summary
judgment for the lessor against the officer. The court of appeals reversed, relying on Schwab,
Curry Auto Leasing, and River Oaks Shopping Center, among others:


[T]his debt resulted from the equipment lease agreement executed by the parties
on February 4, 1982. As such, strictly construing the language of section 171.255,
this debt arose on February 4, 1982, and cannot be said to have been "created" or
"incurred" on or after the dates that the semi-annual payments were due.


McKinney, 734 S.W.2d at 175.

 (5) In Dae Won Choe v. Chancellor, Inc., 823 S.W.2d 740 (Tex. App.Dallas
1992, no writ), the corporation was required to report and pay franchise taxes on March 15, 1988. 
That same day, the corporation entered into a contract for the plaintiff, Dae Won Choe, to
perform sewing services for the corporation (presumably on a per-hour basis, although the opinion
does not say). The corporation did not report and pay its franchise taxes due on March 15. The
plaintiff performed personal services for the corporation from March 15 through March 24. In
a suit brought under section 171.255, the trial court granted summary judgment for the individual
corporate officer. On appeal, the court reversed in part, holding that summary judgment was
proper as to the services rendered on March 15, but not as to services rendered thereafter:


 Under our facts, [the corporate officer] is not liable for debts of the
corporation incurred on March 15, 1988, the date on which the franchise tax and
report were due, because the due date is excluded under the statute; however, she
is liable for the corporate debts incurred for the period beginning March 16, 1988
through March 24, 1988. The summary judgment evidence raises a genuine issue
of material fact as to the amount of debt incurred during this time period.


Id. at 743-44. Thus, the court's holding was that the obligation to pay for personal services was
incurred when the services were rendered.

 (6) In Wilburn v. State, 824 S.W.2d 755, discussed above, the state sued a
corporate officer to recover unemployment taxes the corporation failed to pay. The
unemployment taxes were due April 1, based on wages paid to corporate employees between
January 1 and March 30. The corporation failed to report and pay its franchise taxes due March
15, and its corporate privileges were later forfeited. This Court rejected the state's position that
the unemployment-tax debt was created or incurred when the taxes were due on April 1:


[T]he debt (the obligation to pay contributions to the Unemployment Compensation
Fund) is created or incurred when wages are actually paid. The payment of wages
is the event that both creates (brings into existence) and incurs (brings on or
occasions) the employment-tax liability. Absent payment of employment wages,
there is no employment-tax liability.


Id. at 765. Wilburn is closely analogous to the present case, because it involved a statutorily
created obligation rather than one created by contract.

 I believe the foregoing demonstrates that there is only one reasonable interpretation
of the scope of the personal liability imposed on directors and officers by section 171.255(a): the
debt must have been created or incurred by a post-forfeiture transaction of business by the
corporation. (2) However, even if it could be said that the interpretation adopted by the majority is
also reasonable, the courts have been unanimous in demanding a strict construction of the statute. (3) 
See Schwab, 198 S.W.2d at 81; Davis v. State, 846 S.W.2d 564, 570 (Tex. App.Austin 1993,
no writ); Wilburn, 824 S.W.2d at 760-61; McKinney, 734 S.W.2d at 174; River Oaks Shopping
Ctr., 712 S.W.2d at 191; Curry Auto Leasing, 683 S.W.2d at 111-12. Therefore, we are required
to adopt the construction that gives imposition of personal liability the narrower scope.

 Justice Powers's concurring opinion takes a different tack, concluding that the
Jonnets are personally liable under section 171.255 because the term "debt" has been defined by
the Texas Supreme Court as a "specified sum of money" and is defined elsewhere in chapter 171
of the Tax Code as an obligation "measured in a certain amount of money." See Seay v. Hall,
677 S.W.2d 19, 23 (Tex. 1984); Tax Code § 171.109(a)(3). The statutory definition was added
by an amendment in 1987. See Act of June 1, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex.
Gen. Laws 1734, 1735. The concurring opinion uses this narrow definition to argue that under
section 171.255 a duty or obligation to pay an uncertain sum does not become a "debt" until it is
transformed by a court or administrative agency into a judgment or penalty of a fixed amount. 
From this, the opinion reasons that any post-forfeiture judgment or administrative penalty
necessarily results in personal liability of officers and directors, even ifas in the present casethe
event giving rise to the underlying obligation occurred long before the corporation's failure to
report and pay franchise taxes. Although much of what I have said above applies to this analysis
as well, there are additional reasons why I believe it to be incorrect.

 First, as demonstrated by the terms of the definition in section 171.109 and as
confirmed by legislative history, the definition was not intended to apply to the use of the word
"debt" in section 171.255. The definition contained in section 171.109 states, "`Debt' means any
legally enforceable obligation measured in a certain amount of money which must be performed
or paid within an ascertainable period of time or on demand." Tax Code § 171.109(a)(3). This
statutory definition cannot reasonably apply to a court judgment or an administrative penalty. 
Although judgments and administrative penalties are "measured in a certain amount of money,"
they clearly are not required to be "performed or paid within an ascertainable period of time." 
Nor would it make sense to say that judgments and penalties are payable "on demand." Thus, the
language of the definition itself is inconsistent with its application to judgments and administrative
penalties. (4)

 The legislature's intent that the definition not apply to section 171.255 is confirmed
by the legislative history of the bill that became the 1987 amendment adding the definition of
"debt" to section 171.109. The report of the House Ways and Means Committee, the "Fiscal
Note" from the director of the Legislative Budget Board, and the bill analysis prepared by the
House Research Organization all reflect that the purpose of the amendment was to codify an
existing accounting rule of the State Comptroller of Public Accounts that was being challenged
in court by various parties. See House Ways and Means Comm., Bill Analysis, Tex. S.B. 1170,
70th Leg., R.S. (1987); Fiscal Note, Tex. S.B. 1170, 70th Leg., R.S. (1987); House Research
Organization, Bill Analysis, Tex. S.B. 1170, 70th Leg., R.S. (1987). A corporation calculates
how much franchise tax it owes based, in part, on the amount of its surplus. The comptroller had
adopted an accounting rule prohibiting corporations from deducting from their calculation of
surplus any sums set aside by the corporation to provide for contingent or estimated losses. 
Rather, under the comptroller's rule, only debts of a fixed amount could be used to reduce a
corporation's surplus. Several corporations had successfully challenged the validity of the
comptroller's rule in court and, although the court rulings were being appealed, the legislature
sought to codify the rule in order to protect against a possible revenue shortfall in the event the
appeals were unsuccessful. Thus, the legislature added the amendment in order to guarantee that
corporations could not, in calculating their franchise taxes, reduce the amount of their surplus by
unrealized, estimated, or contingent losses. Rather, as under the comptroller's rule, only debts
of a fixed, certain amount would be allowed to reduce surplus. Based on the eventual results of
the state's appeals in the court challenges, the legislature's decision to adopt the amendment was
a wise one. See State v. Shell Oil Co., 747 S.W.2d 54 (Tex. App.Austin 1988, no writ); State
v. Sun Ref. & Mktg., Inc., 740 S.W.2d 552 (Tex. App.Austin 1987, writ denied); State v. Sun
Oil Co. (Del.), 740 S.W.2d 556 (Tex. App.Austin 1987, no writ). For purposes of the present
case, however, the important point is that the 1987 amendment adding the definition of "debt" to
section 171.109 was unquestionably not intended to alter the scope of officer and director liability
under section 171.255.

 Second, the analysis adopted by the concurring opinion is contrary to a strict
construction of the statute and has been expressly rejected by at least two courts. In Rogers v.
Adler, 696 S.W.2d 674 (Tex. App.Dallas 1985, writ ref'd n.r.e.), the plaintiff sued the
corporation under both contract and tort theories; the judgment did not specify which theory
formed the basis of the judgment. In a subsequent suit against the individual officers and directors
of the corporation, the plaintiff argued that, because the supreme court had defined "debt" as a
"specified sum of money," Seay, 677 S.W.2d at 23, her tort cause of action did not constitute a
"debt" until it was reduced to judgment. The Rogers court rejected this argument:


[W]hile we adhere to the supreme court's definition of "debt" as being an
obligation for a specific sum, we are persuaded that it cannot be so narrowly
applied within the context of the Code section before us. . . .


 . . . [A] strict construction of the statute would prohibit the imposition of
liability in a case, such as here, where all of the operative facts occurred at least
four years before the charter was forfeited. The mere fact that the amount of
money owed to [the plaintiff] as damages was unspecified at the time of the
forfeiture does not establish that the debt was created or incurred after forfeiture.


. . . .


 . . . We are persuaded that, as applied to the case before us, the distinction
[between tort and contract] is one without a difference. This is true because the
major premise forming the basis for [the plaintiff's] argument is not that her claim
"sounded in tort," but, instead, that no debt was in existence, that is, incurred until
her claim was reduced to judgment.


696 S.W.2d at 676-77. Thus, the court held that although a "debt" might be properly defined as
a "specified" sum of money for some purposes, that narrow definition was not applicable in a case
based on section 171.255(a).

 The analysis embraced by the concurring opinion was also rejected in Curry Auto
Leasing, where the court held that the mere reduction of an indebtedness to judgment does not
constitute the "creation" or "incurrence" of a debt:


 Curry Auto is not understood to urge that the reduction of its damages to
judgment converted the sum thereof into new indebtedness created or incurred after
forfeiture. Nevertheless, it is worthwhile to note that the principles of strict
construction enunciated in Schwab would prohibit this construction. Under this
prohibited construction, officers and directors would become liable for any
judgment rendered after forfeiture, regardless of when the debt on which the
judgment is based was created or incurred.


683 S.W.2d at 112.

 Finally, the concurring opinion misconstrues the strict-construction doctrine. That
opinion asserts that a strict construction of section 171.255 requires that a narrow, restricted
meaning be given to the term "debt," which would then support the opinion's conclusion that no
debt was created or incurred until the corporate obligation ripened into a fixed amount through
the Commission's assessment of a penalty. This application of the strict-construction doctrine is
incorrect. Under strict construction, it is the operation of the statute as a whole that is restricted,
not the meaning of some isolated word or phrase:

 Strict construction . . . does not require that the words of a statute be given
the narrowest meaning of which they are susceptible. The language used by the
Legislature may be accorded a full meaning that will carry out its manifest purpose
and intention in enacting the statute, but the operation of the law will then be
confined to cases which plainly fall within its terms as well as its spirit and
purpose.


Coastal States Gas Producing Co. v. Pate, 309 S.W.2d 828, 831 (Tex. 1958) (emphasis added);
see also City of Ingleside v. Kneuper, 768 S.W.2d 451, 457 (Tex. App.Austin 1989, writ
denied). See generally 3 Norman J. Singer, Sutherland Statutory Construction § 58.02, at 72-73
(5th ed. 1992). Thus, in the context of interpreting section 171.255, the doctrine of strict
construction requires that the statute be construed so that the penalty imposed by that
provisionpersonal liabilityis applied only to cases that "plainly fall within its terms as well as
its spirit and purpose." Coastal States, 309 S.W.2d at 831. In the present case, the terms,
purposes, and spirit of section 171.255 all militate against an interpretation of the term "debt" that
would impose personal liability on officers and directors for corporate obligations merely because,
by twist of fate, such obligations were not reduced to a fixed amount until after the corporation
had failed to report and pay its franchise taxes. We should be loath to disregard the protections
of the corporate form on such a whim.

 For the foregoing reasons, I would reverse the judgment of the trial court. (5)



 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Filed: June 8, 1994

Publish
1. "Post-forfeiture" is a term by which I mean the time after the date the franchise taxes
and report were due and before corporate privileges were revived. See Wilburn v. State, 824
S.W.2d 755, 762 (Tex. App.Austin 1992, no writ).
2. I do not mean by this to say that the corporation must commit some affirmative act. 
Passive acts, such as the acceptance of money or services, may also constitute the transaction of
business.
3. This Court has called the statute "highly penal in nature and one which could produce
great hardship." See Sheffield v. Nobles, 378 S.W.2d 391, 392 (Tex. Civ. App.Austin 1964,
writ ref'd). One commentator has referred to the statute as a "Draconian provision." See Robert
W. Hamilton, The Corporate Entity, 49 Tex. L. Rev. 979, 995-96 (1971).
4. Moreover, even though the definition of "debt" in section 171.109 applies "in this
chapter," the placement of the definition in that section lends support to the conclusion that it was
not intended to alter the meaning of the word "debt" in section 171.255. The title of section
171.109 is "Surplus," and it contains other definitions and provisions indicating clearly that the
purpose of the entire section is to regulate how a corporation calculates the amount of its surplus,
from which it determines the amount of franchise taxes owed.
5. The trial court also concluded that the Jonnets waived any complaint about their
individual liability because they did not respond to the State's suit with a verified answer
pursuant to Rule 93(2), Tex. R. Civ. P., denying that they were liable in the capacity in
which they were sued. Because the trial court's waiver conclusion could be an independent
ground for affirming the trial court's judgment, this point of error would also have to be
sustained before the trial court's judgment could be reversed. As a result of the majority's
decision on the "created or incurred" issue, however, neither the majority nor concurring
opinion addresses the Jonnets' third point of error in which they complain of the trial court's
conclusion as to waiver.


 Without addressing the issue in depth, suffice it to say that Rule 93(2) applies when
a defendant wishes to assert that he has been sued in a mistaken legal capacity. See John
Chezik Buick Co. v. Friendly Chevrolet Co., 749 S.W.2d 591, 593 (Tex. App.Dallas 1988, writ
denied); Miles v. Plumbing Servs. of Houston, Inc., 668 S.W.2d 509, 512-13 (Tex.
App.Houston [14th Dist.] 1984, writ ref'd n.r.e.). In a case like the present one, where the
Jonnets were correctly sued in their individual capacities and properly responded by denying that
they were liable at all, Rule 93(2) has no application whatsoever. I would sustain the Jonnets'
third point of error.