TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00429-CV






Texas Health Insurance Risk Pool, Appellant


v.


Southwest Service Life Insurance Company and Regal Life of America
Insurance Company, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. D-1-GN-06-002848, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





O P I N I O N


 Southwest Service Life Insurance Company ("Southwest") and Regal Life of America
Insurance Company ("Regal") brought a declaratory-judgment action against the Texas Health
Insurance Risk Pool ("the Pool"), seeking a declaration that Southwest and Regal were not liable for
certain amounts assessed against them by the Pool. See Tex. Ins. Code Ann. §§ 1506.251, .253
(West Supp. 2008) (providing that Pool may levy annual and interim assessments on health insurers
to cover operating expenses). The parties filed cross motions for summary judgment, and the trial
court granted Southwest and Regal's motion and denied the Pool's motion. After a bench trial on
the limited issue of attorney's fees, the trial court awarded fees in favor of Southwest and Regal. The
Pool appeals, arguing that the trial court erred in granting summary judgment in favor of Southwest
and Regal. The Pool further argues that because the summary judgment was improper, the attorney's
fee award should also be reversed. Because we hold that the trial court did not err in granting
summary judgment or abuse its discretion in awarding attorney's fees, we affirm the trial
court's judgment.


BACKGROUND

 The legislature created the Pool in 1989 for the purpose of providing access to health
insurance coverage to otherwise uninsurable Texans. See Act of May 27, 1989, 71st Leg., R.S.,
ch. 1094, 1989 Tex. Gen. Laws 4477. However, the Pool was not funded for operation at that time
and remained dormant for several years. In 1996, Congress enacted the Health Insurance Portability
and Accountability Act (HIPAA), which, among other things, set new federal minimum standards
for insurers offering insurance policies to individuals, prohibiting these insurers from (1) declining
coverage, (2) limiting coverage, (3) charging a higher premium, or (4) imposing preexisting
condition limitations on certain qualifying applicants. See 42 U.S.C. § 300gg-41(a) (West 2003). 
HIPAA allowed states to opt out of enforcing these minimum standards by implementing an
acceptable state-run alternative mechanism, such as a qualifying high-risk pool. See id. § 300gg-44(a)(1)(D)(ii) (West 2003). In response to HIPAA, the Texas Legislature funded the Pool for
operation and brought it into compliance to serve as a state-run alternative mechanism. See Act of
May 10, 1997, 75th Leg., R.S., ch. 837, 1997 Tex. Gen. Laws 2679. The legislature decided that the
Pool's funding would be derived in part from interim and annual assessments on health insurance
companies doing business in Texas. See Tex. Ins. Code Ann. §§ 1506.251, .253.

 The issue presented by this case is whether, at the time in question, Southwest and
Regal were subject to the Pool's interim and annual assessments, which could only be imposed on
entities issuing "health benefit plan[s]." Id. Upon receiving notices of assessment from the Pool in
July 2006, which included an annual assessment for 2005 and an interim assessment for 2006,
Southwest and Regal sought a declaratory judgment that they were not obligated to pay the amounts
assessed. (1) The definition of "health benefit plan" has been amended multiple times, but in 2006, the
statute expressly excluded the following types of health insurance from the definition of "health
benefit plan":

(1) accident insurance;

(2) a plan providing coverage only for dental or vision care;

(3) fixed indemnity insurance, including hospital indemnity insurance;

(4) credit insurance;

(5) long-term care insurance;

(6) disability income insurance;

(7) other limited benefit coverage, including specified disease coverage;

(8) coverage issued as a supplement to liability insurance;

(9) insurance arising out of a workers' compensation law or similar law;

(10) automobile medical payment insurance; or 

(11) insurance coverage under which benefits are payable with or without regard to 

fault and that is statutorily required to be contained in a liability insurance policy or
equivalent self-insurance.


Tex. Ins. Code Ann. § 1506.002(b) (West Supp. 2006). (2) Southwest and Regal argue that the types
of policies they issue qualify as "other limited benefit coverage" under section 1506.002(b)(7), and
therefore they are not subject to assessment, while the Pool contends that "other limited benefit
coverage" does not include the policies issued by Southwest and Regal.


STANDARD OF REVIEW

 Summary judgments are reviewed de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the
same issues, and the trial court grants one motion and denies the other, the appellate court considers
the summary-judgment evidence presented by both sides, determines all questions presented, and
if the reviewing court finds that the trial court erred, renders the judgment the trial court should
have rendered. Id. 

 The question of whether Southwest and Regal were subject to the assessments at issue
turns solely on an issue of statutory construction. Statutory construction is a legal question that we
review de novo. State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of
statutory construction, we are required, first and foremost, to follow the plain language of the statute. 
General Motors Corp. v. Bray, 243 S.W.3d 678, 685 (Tex. App.--Austin 2007, no pet.). We must
read the statute as a whole, rather than just isolated portions, giving meaning to the language that is
consistent with other provisions in the statute. Dallas County Cmty. Coll. Dist. v. Bolton,
185 S.W.3d 868, 872-73 (Tex. 2005); Texas Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d
637, 642 (Tex. 2004). 

 A trial court's judgment in granting or denying attorney's fees in a
declaratory-judgment action is reviewed for abuse of discretion. Oake v. Collin County, 692 S.W.2d
454, 455 (Tex. 1985). The trial court's judgment will not be reversed unless "the trial court
abused its discretion by awarding fees when there was insufficient evidence that the fees were
reasonable and necessary, or when the award was inequitable or unjust." Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998). 


DISCUSSION

 In its first issue on appeal, the Pool argues that the Southwest and Regal policies do
not fall within the exception to the definition of "health benefit plan" for "other limited benefit
coverage." See Tex. Ins. Code Ann. § 1506.002(b)(7). In support of this argument, the Pool
contends that the word "other," in the phrase, "other limited benefit coverage," necessarily implies
that all of the preceding policy types in the list are limited in some common way and that only
policies limited in the same manner qualify as "other limited benefit coverage." The Pool
characterizes each of the listed policy types as being limited in the scope or reach of coverage but
not necessarily in the degree or dollar amount of benefits granted. The Pool further argues that the
policies issued by Southwest and Regal do not qualify as "other limited benefit coverage" because
they are limited only in the degree or amount of benefits granted, rather than the scope or reach of
coverage. Southwest and Regal dispute this characterization of their policies, asserting that their
policies are limited both in the scope of coverage and in the degree of benefits granted. (3)

 We need not decide whether the policies issued by Southwest and Regal are
sufficiently limited in scope because we disagree with the Pool's assertion that limitation in scope
is the sole common trait shared by the policy types listed in section 1506.002(b)(1)-(6). As
Southwest and Regal point out, "fixed indemnity insurance," see id. § 1506.002(b)(3), is not
necessarily limited in the scope of coverage provided, but instead imposes a limit on the dollar
amount of benefits. (4) While the Pool argues that fixed indemnity insurance differs from the policies
issued by Southwest and Regal because fixed indemnity policies provide benefits that are limited
to predetermined amounts, the fact remains that fixed indemnity insurance refers to a type of
insurance for which the defining characteristic is a limitation in benefit amounts, rather than a
limitation in scope. Therefore, assuming without deciding that Southwest and Regal's policies are
limited only in the amount of benefits granted, rather than scope of coverage, such policies are not
necessarily disqualified from falling under "other limited benefit coverage" on this basis. 

 Significantly, the Texas Department of Insurance (the "Department") has classified
the policies issued by Southwest and Regal as "limited benefit coverage" under section 3.3079 of
the administrative code. See 28 Tex. Admin. Code § 3.3079 (defining minimum standards for
limited benefit coverage). Limited benefit coverage is defined by Department regulation as "a policy
of accident and sickness insurance" where "the types and/or amounts of benefits are less than" the
minimum standards for basic hospital expense coverage, basic medical-surgical expense coverage,
and disability income protection coverage. Id. Southwest and Regal, like all insurers providing
limited benefit coverage under Rule 3.3079, are required by the Department to "prominently display
at the top of the outline of coverage and on the face page of the policy in no less than 14 point type"
a notice regarding the policy's limitations. Id. The required language of this notice is set forth in
Rule 3.3091(a) as follows: 


THE POLICY DESCRIBED IN THIS OUTLINE PROVIDES LIMITED BENEFITS
ONLY WHICH ARE LESS THAN THE MINIMUM STANDARD FOR BENEFITS
FOR (STATE CATEGORY OF COVERAGE) AS PRESCRIBED BY THE
INSURANCE REGULATORY AUTHORITY OF YOUR STATE. 



Id. § 3.3091(a). Rule 3.3079(a) was adopted by the Department in 1977 and remained in effect
throughout the enactment and each subsequent amendment of section 1506.002(b). See 2 Tex. Reg.
159 (1977) (to be codified at 28 Tex. Admin. Code § 3.3079).

 We must presume that the legislature is aware of how a particular industry operates
when passing laws regulating that industry. See Massachusetts Indem. & Life Ins. Co. v. Texas State
Bd. of Ins., 685 S.W.2d 104, 109 (Tex. App.--Austin 1985, no writ) ("[T]he legislature, in its
enactment of a statute regulating a business activity, is presumed to be familiar with the manner in
which the business was conducted at the time."); Western Co. v. Sheppard, 181 S.W.2d 850, 856
(Tex. Civ. App.--Austin 1944, writ ref'd) ("It must be presumed that the Legislature, when it passed
the act, was familiar with the manner in which such business [regulated by the act] was conducted.");
see also Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed
to have been enacted by the legislature with complete knowledge of the existing law and with
reference to it."). Under this presumption, the legislature would have been aware, in creating an
exception for "other limited benefit coverage" in section 1506.002(b)(7), that certain types of
insurance policies were considered to be "limited benefit coverage" under Department regulations
and were regulated by specific minimum standards and notice requirements. 

 The Pool argues that Rule 3.3079 is irrelevant to the present case because "specified
disease coverage" is not considered "limited benefit coverage" under Rule 3.3079, while the
exception in section 1506.002(b)(7) specifically excepts "other limited benefit coverage, including
specified disease coverage." However, Southwest and Regal do not argue, nor do we hold, that the
legislature intended "limited benefit coverage" in section 1506.002(b)(7) to be a term of art,
describing only those policies that qualify as "limited benefit coverage" under Rule 3.3079. Rather,
the existence of Rule 3.3079 merely allows us to presume that the legislature was aware that the
Department considered certain policies, such as those issued by Southwest and Regal, to provide
such significantly limited coverage--in scope, dollar amount of benefits, or both--that they warrant
a disclaimer warning consumers of the limitations. As a result, we find it significant that the
legislature did not restrict the exception in section 1506.002(b)(7) to only those policies that are
limited in scope, or limited in the same particular character as the other policies on the list, but more
generally excepted "other limited benefit coverage." See Cameron v. Terrell & Grant, Inc.,
618 S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must also be presumed
to have been excluded for a purpose."). The legislature's failure to exclude any particular class of
policies that were considered "limited benefit coverage" under Department regulations suggests an
intent to include all such policies in the exception for "other limited benefit coverage" in
section 1506.002(b)(7).

 The Pool further argues that section 1506.002(b)(7) should be read to incorporate
certain HIPAA regulations, in light of the Pool's purpose as an alternative mechanism to HIPAA. 
Specifically, the Pool contends that the term "other limited benefit coverage" was modeled after a
federal exception from HIPAA compliance for "[s]uch other similar, limited benefits as are specified
in regulations," 42 U.S.C. § 300gg-91(c)(2)(C) (West 2003), and that because Southwest and
Regal's policies do not qualify as "limited benefits" under HIPAA regulations, they are also
excluded from "other limited benefit coverage" under section 1506.002(b)(7).

 This argument fails in light of the legislature's demonstrated ability to reference
HIPAA regulations when necessary. Section 1205.004 of the insurance code provides a list of
policies that are not creditable toward HIPAA coverage, including "coverage that provides other
limited benefits specified by federal regulations." Tex. Ins. Code Ann. § 1205.004(b)(11)
(West Supp. 2008) (emphasis added). Section 1205.004(b)(11) indicates that where the legislature
has intended to incorporate HIPAA regulations into a statute, it has done so by explicit reference. 
Section 1506.002(b)(7), on the other hand, contains no such reference. As a result, we conclude that
the legislature did not intend to incorporate HIPAA regulations into section 1506.002(b)(7). See
Quick v. City of Austin, 7 S.W.3d 109, 122-23 (Tex. 1999) ("Thus, while the Legislature clearly was
well-versed in drafting statutes that explicitly provided that a local act was not effective until
approved by the Commission, the Legislature chose not to include such an express provision in
section 26.177(c). We presume that this omission has a purpose."). 

 An agency's interpretation of a statute it is charged with enforcing is entitled to
deference, provided the agency's interpretation is reasonable and does not contradict the plain
language of the statute. See Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993). 
The Pool argues that in interpreting section 1506.002(b), we should defer to a regulation adopted by
the Department in response to the legislature's 1997 decision to fund the Pool for operation. See
23 Tex. Reg. 1309 (1998) (to be codified at 28 Tex. Admin. Code § 3.13001) (proposed Dec. 19,
1997) transferred by 24 Tex. Reg. 3092 (1999) (to be codified at 28 Tex. Admin. Code § 3.4401). (5) 
Rule 3.4401 did not exclude "other limited benefit coverage" from the Pool's assessments, as
required by section 1506.002(b)(7), but provided that only the following types of coverages would
avoid assessment:


(i) short term limited duration coverage;


(ii) coverage only for accident (including accidental death and dismemberment);


(iii) disability income insurance;


(iv) dental only or vision only benefits . . . ;


(v) credit insurance;


(vi) coverage only for a specified disease or illness . . . or hospital indemnity or other
fixed indemnity insurance . . . ;


(vii) coverage issued as a supplement to liability insurance;


(viii) insurance arising out of workers' compensation or similar law;


(ix) automobile medical-payment insurance and personal injury protection; or 


(x) insurance under which benefits are payable with or without regard to fault and
which is statutorily required to be contained in any liability insurance policy or
equivalent self insurance.



See 28 Tex. Admin. Code § 3.4401(a)(1)(B). The list of exceptions in Rule 3.4401 does not include
"other limited benefit insurance" other than specified disease coverage. Section 1506.002(b) of the
insurance code, however, specifically excepts "other limited benefit insurance, including specified
disease coverage." Tex. Ins. Code Ann. § 1506.002(b)(7) (emphasis added). The word "including"
must be construed as a term of enlargement, signifying a non-exhaustive list. Tex. Gov't Code Ann.
§ 311.005(13) (West 2005) ("'Includes' and 'including' are terms of enlargement and not of
limitation or exclusive enumeration, and use of the terms does not create a presumption that
components not expressed are excluded."). In light of this rule of statutory construction, the
exception for "other limited benefit coverage, including specified disease coverage," is not solely
limited to specified disease coverage, but includes additional types of limited benefit coverage. See
Wilburn v. State, 824 S.W.2d 755, 762 (Tex. App.--Austin 1992, no writ) (holding that where
statute states that directors and officers' liability "includes" franchise taxes, legislature did not
impliedly intend to exclude all items not listed).

 While we generally afford deference to an agency's interpretation of a statute it is
charged with enforcing, we will not do so when that interpretation is inconsistent with the plain
language of the statute. See Tarrant Appraisal Dist., 845 S.W.2d at 823. To the extent that the
Department, in adopting Rule 3.4401(a)(1)(B), interprets the exception for "other limited benefit
coverage, including specified disease coverage" in section 1506.002(b)(7) to refer solely to specified
disease coverage, this interpretation is inconsistent with the plain language of the statute and is not
entitled to deference.

 In its final argument, the Pool cites to the most recent amendment to
section 1506.002, which replaced the exception for "other limited benefit coverage" with an
exception for "other similar, limited benefits specified by federal regulations issued under [HIPAA]."
 See Act of May 23, 2007, 80th Leg., R.S., ch. 808, § 2, 2007 Tex. Gen. Laws 1674, 1676; Act of
May 21, 2007, 80th Leg., R.S., ch. 881, § 2, 2007 Tex. Gen. Laws 1895, 1897. The Pool claims that
this amendment is evidence that the legislature "always intended" to impose the Pool's assessments
on insurers like Southwest and Regal. However, as this Court has previously observed, "One
legislature's interpretation of a prior legislature's enactment may be persuasive but does not control
the interpretation of the prior act. And, if the later legislation differs significantly from existing law,
the later legislation changes rather than clarifies existing law." Williamson Pointe Venture v. City
of Austin, 912 S.W.2d 340, 345 (Tex. App.--Austin 1995, no writ) (citations omitted). The
2007 amendment not only tied the exceptions from assessment to HIPAA regulations, but also
substantially revised the definition of "health benefit plan," altered Pool eligibility requirements, and
changed the method of calculating annual and interim assessments to assess insurers based on gross
premiums received rather than the number of policies issued. (6) See Act of May 23, 2007, 80th Leg.,
R.S., ch. 808, 2007 Tex. Gen. Laws 1674; Act of May 21, 2007, 80th Leg., R.S., ch. 881, 2007 Tex.
Gen. Laws 1895. Because the amended statute differs significantly from the law as it existed in
2006, we conclude that the 2007 amendments served to change, rather than clarify, the existing law
by adopting HIPAA regulations in reference to the exceptions from Pool assessments. See
Williamson Pointe Venture, 912 S.W.2d at 345.

 Because we have determined that, during the relevant time period, the exception from
assessment for "limited benefit coverage" in section 1506.002(b)(7) necessarily included the types
of policies issued by Southwest and Regal, we hold that the trial court did not err in granting
summary judgment in their favor. The Pool's first point of error is overruled. 

 In its second point of error, the Pool argues that the trial court abused its discretion
in awarding attorney's fees in favor of Southwest and Regal. See Bocquet v. Herring, 972 S.W.2d
19, 21 (Tex. 1998) (holding that in declaratory-judgment action, trial court abuses its discretion "by
awarding [attorney's] fees where there was insufficient evidence that the fees were reasonable and
necessary, or when the award was inequitable or unjust"). Having stipulated to the reasonableness
of Southwest and Regal's attorney's fees in this case, the Pool argues only that the award was
inequitable and unjust in light of the trial court's error in granting summary judgment. Given our
disposition of the Pool's first point of error, we further hold that the attorney's fee award was not
inequitable or unjust.

CONCLUSION

 Because we have determined that the trial court did not err in granting summary
judgment in favor of Southwest and Regal and did not abuse its discretion in awarding
attorney's fees, we affirm the trial court's judgment.


 

 Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: December 12, 2008

1. Prior to 2003, Southwest and Regal paid the Pool's assessments without protest, though
the statute in effect at that time included "other limited benefit insurance" in the list of exceptions
to the types of health insurance plans that would trigger assessments. See Act of May 10, 1997,
75th Leg., R.S., ch. 837, § 1.01, 1997 Tex. Gen. Laws 2679, 2680. From 2003 to 2005, "other
limited benefit insurance" was removed from the list of exceptions, and Southwest and Regal
concede that they were not subject to any statutory exception during that time. See Act of
May 28, 2003, 78th Leg., R.S., ch. 840, § 1, 2003 Tex. Gen. Laws 2627, 2628 (amending statute to
remove "other limited benefit insurance" from list of exceptions); Act of May 29, 2005, 79th Leg.,
R.S., ch. 824, § 1, 2005 Tex. Gen. Laws 2824, 2825 (amending statute to reinsert exception for
"other limited benefit coverage"). In addition to reinserting "other limited benefit coverage" into
the list of exceptions to "health benefit plan," the 2005 amendment also altered the method used to
calculate assessments from a calculation based on gross premiums received to a calculation based
on the number of policies issued. See Act of May 29, 2005, 79th Leg., R.S., ch. 824, § 8,
2005 Tex. Gen. Laws 2824, 2827-28. This new method of calculation resulted in significantly
higher assessments for Regal and Southwest. The disputed notice of assessment in the present
case--the July 2006 notice--was the first notice received by Southwest and Regal after the effective
date of the 2005 amendment. The statute was amended again in 2007 to exclude only certain limited
benefit plans and to return to the assessment calculation method employed prior to 2005, assessing
insurers based on gross premiums rather than the number of policies issued. See Act of
May 23, 2007, 80th Leg., R.S., ch. 808, § 2, 2007 Tex. Gen. Laws 1674, 1676; Act of May 21, 2007,
80th Leg., R.S., ch. 881, §§ 2, 13, 2007 Tex. Gen. Laws 1895, 1897, 1900-01. Because the parties
agree that the policies issued by Southwest and Regal are not excluded from the definition of "health
benefit plan" under the current statute, our analysis in this case applies only to those assessments
occurring between the effective dates of the 2005 and 2007 amendments.
2. Unless otherwise specified, references to section 1506.002 of the insurance code will refer
to the 2006 version of the statute.
3. The summary-judgment evidence included an affidavit by Jerry Hall, Executive
Vice President and Secretary of Southwest and Regal, stating, "The policies issued by Southwest and
Regal provide a much narrower scope of coverage than policies that meet the minimum standards
of major medical coverage like those issued by the [Risk Pool]." 
4. While Texas law does not define "fixed indemnity insurance," one state has defined it as
an insurance policy that "pays a predetermined, specified, fixed benefit for services provided." 
Minn. Stat. § 62A.135, subd. 1(a).
5. Rule 3.13001, which was later transferred to Rule 3.4401, has not been amended since its
adoption in 1998, despite multiple amendments to section 1506.002.
6. This change in the calculation method reduces the assessment burden shouldered by
insurers such as Southwest and Regal who offer limited benefit coverage in return for lower
premiums, a result that the legislature may very well have considered in limiting the types of policies
that qualify for an exception from assessment.